[No. 13486. *En Banc.* November 28, 1916.]

*In the Matter of* WESTERN AVENUE.

CANNIE FORD TRIMBLE *et al., Appellants,* v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS— BENEFITS—REVIEW. The action of eminent domain commissioners in assessing property for benefits from improvements more than a mile distant will not be disturbed on appeal where the evidence as to the fact of benefits was conflicting; as that was a question of fact which cannot be reversed except in case of fraud, mistake or arbitrary action amounting to an abuse of discretion.

SAME — PUBLIC IMPROVEMENTS — ORDINANCE — IMPLIED REPEAL — EMINENT DOMAIN—ABANDONMENT OF PROCEEDINGS. Where, after the passage of an ordinance for a street improvement and condemnation and award thereunder, the city passed a second ordinance providing for an additional widening of one of the streets and a different system of grades but condemnation proceedings thereunder were abandoned, the second ordinance does not repeal the first ordinance by implication, where there was no such intention, and the two months within which the city could abandon the first condemnation under Rem. & Bal. Code, § 7816, had expired before the second ordinance was passed.

SAME — PUBLIC IMPROVEMENTS — ASSESSMENT — STATE LANDS — STATUTES—"LOCAL IMPROVEMENTS." Rem. 1915 Code, § 6875, providing that all city lands of the state except tide lands may be assessed for the cost of local improvements specially benefiting the same, authorizes an assessment for street improvements against a state armory site situated on upland in a city; "local improvement" including improvements made upon streets and not upon the land itself.

[1]Reported in 161 Pac. 381.

SAME—PUBLIC IMPROVEMENTS—ASSESSMENT—NOTICE. Under Rem. 1915 Code, § 6877, providing that no city shall have jurisdiction to make a local improvement or levy an assessment against state lands until notice of the making of such proposed improvement and the fixing of the time for hearing and confirming the same be served upon the state land commissioner, it is sufficient that notice was given when it was determined that the state land was specially benefited and the state appeared and was heard in opposition to the assessment.

Appeal from a judgment of the superior court for King county, Tallman, J., entered September 27, 1915, confirming an assessment roll for a public improvement. Affirmed.

*Kerr & McCord* and *Peters & Powell,* for appellants Trimble *et al.*

*The Attorney General* and *L. L. Thompson, Assistant,* for appellant State of Washington.

*Hugh M. Caldwell, Walter F. Meier,* and *Howard A. Hanson,* for respondent.

MOUNT, J.—This is an appeal from a judgment of the superior court for King county confirming an assessment roll prepared by the board of eminent domain commissioners of the city of Seattle. It appears that, on the 10th day of January, 1910, the city council of the city of Seattle passed ordinance No. 23,040 providing for the laying off, extending, and establishing of Western avenue from West Denny Way to Elliott avenue, and of Queen Anne avenue from West Denny Way to Western avenue, in Seattle, and providing for the condemnation, appropriation, taking, and damaging of land and other property necessary therefor; providing for the changing and establishing of the curb grades of Western avenue and Western avenue extended, and approaches thereto, from Eagle street to Elliott avenue; of West Denny Way from Western avenue to First avenue north; of Queen Anne avenue from West Denny Way to West John street; of West John street from Western avenue as extended to Queen Anne avenue; of First avenue west to Western avenue as extended,

and connecting alleys; providing for the condemnation, appropriation, taking and damaging of land and other property necessary for the grading and regrading of said avenues, streets, approaches thereto, and connecting alleys, in conformity with such established grades; and for the construction of all necessary slopes for cuts and fills upon the property abutting upon said avenues, streets, approaches thereto, and connecting alleys, and providing that payment for such improvement be made by special assessment upon the property specially benefited and in the manner provided by law, and that any part of the cost of said improvement not finally assessed against the property specially benefited be paid from the general fund of the city of Seattle.

Pursuant to the provisions of this ordinance, the city instituted a condemnation proceeding, wherein a judgment was entered on May 25, 1912, on awards theretofore made by a jury impaneled in said cause, in the sum of $107,676.34 in favor of the property owners affected.

On December 24, 1912, the city of Seattle filed a supplemental petition praying that an assessment be made for the purpose of raising the amount necessary to pay the condemnation damages so awarded. This petition was granted, and the board of eminent domain commissioners of the city was directed to prepare an assessment roll covering the property deemed to be specially benefited. The board of eminent domain commissioners did so and assessed $98,201 of the costs of the improvement to the property found to be specially benefited, and $37,206.42 was charged against the general fund of the city.

The assessment roll was filed by the board of eminent domain commissioners on January 19, 1915, and included properties located on the four corners of Pike street and Second avenue in Seattle. Objections to the confirmation of the assessment roll were filed on February 16, 1915, by the owners of the property on the corners of Pike street and Second avenue. A hearing was had upon these objections on Sep-

tember 27, 1915. The court entered an order confirming the assessment as against these properties, and the owners thereof have appealed from that order.

It is argued, first, that the properties of the appellants were not specially benefited, and, in fact, not benefited at all; and second, that the ordinance by authority of which the assessment roll was made up had, prior to the time the same was prepared, been repealed, and that the casting of the assessment roll was, therefore, without warrant of law. The state insists that state lands may not be assessed by a municipal corporation for the purpose of paying verdicts rendered in condemnation proceedings. We shall briefly notice these contentions in their order.

Upon the first question, it is argued that, because the property of these appellants at Second avenue and Pike street is a mile away from the improvement, there is no special benefit to the property of these appellants. It is at once apparent that this is a question of fact; and evidence was introduced by the appellants to the effect that there was no special benefit to the property by reason of the fact that the improvement would in no way tend to benefit their property. Evidence was offered on behalf of the city to the effect that the appellants' property is located about the civic center of the city, and that this improvement would afford a better way for travel to the appellants' property; and that the result would be more people would pass by the appellants' property after the improvement than before. It is not claimed, as we understand the appellants, that there was any fraud upon the part of the eminent domain commissioners in levying the assessment. But it is claimed that, because of the great distance from the appellants' property to the improvement, there can be in fact no special benefit thereto. This, it seems to us, is a question of fact to be determined by the board of eminent domain commissioners, whose decision is reviewable by the superior court. That court concluded, after hearing all the evidence, that there was a special benefit. This court has

held upon questions of this character that a conflict in the evidence is not sufficient to justify a reversal of the lower court, and that the order of the lower court confirming the action of the eminent domain commissioners will not be reversed except in cases of fraud, mistake, or arbitrary action amounting to an abuse of discretion, or when based upon a fundamentally wrong basis, which must clearly appear from the evidence. *In re Westlake Avenue,* 40 Wash. 144, 82 Pac. 279; *In re Seattle,* 46 Wash. 63, 89 Pac. 156; *Spokane v. Fonnell,* 75 Wash. 417, 135 Pac. 211, and cases therein cited.

We are satisfied from a careful review of the evidence and the entire situation presented in this improvement, that there was no arbitrary action on the part of the eminent domain commission, that there was no fraud, and no action amounting to an abuse of discretion, and that the assessment was not based upon a fundamentally wrong basis.

It is next argued that ordinance No. 23,040 was repealed by ordinance No. 30,864. It appears that, after ordinance No. 23,040 had been passed, and condemnation proceedings had thereunder, and award of judgment in condemnation had been made, the city thereafter passed ordinance No. 30,864, providing for an additional widening of Western avenue from Eagle street to Fourth avenue west and Elliott avenue, and providing for the condemnation and appropriation of other property necessary therefor. This ordinance provided for the establishment of certain curb grades and other improvements upon Western avenue. Ordinance No. 23,040 was not repealed by the later ordinance. The later ordinance, as we understand the record, provided for a wider street upon Second avenue and a different system of grades. After the passage of the later ordinance, and after condemnation proceedings had been instituted, the city passed another ordinance abandoning the proceedings under ordinance No. 30,-864. The proceedings which had been instituted under that ordinance were dismissed and the costs thereof paid by the city.

The appellants contend that the second ordinance repealed the first ordinance by implication because the latter ordinance covered the subject-matter of the earlier ordinance. We think it is plain that the second ordinance simply contemplated a more extensive improvement upon these avenues than the first ordinance. Some changes would have been made if the second ordinance had been carried out according to its intention. But it seems clear to us that there was no intention on the part of the city to repeal the former ordinance. The whole intention was, as we have before stated, to make a more extended improvement by another change of the grades which were made by the first ordinance, and a double roadway in addition to that provided for in the first ordinance. There was clearly no intention on the part of the city to abandon the condemnation proceedings under the first ordinance. In fact and in law, the time had expired within which the city could abandon the first condemnation proceedings under the first ordinance. Laws of 1907, p. 337, § 49 (Rem. & Bal. Code, § 7816). The two months' time had elapsed after the first ordinance had been passed. The awards in condemnation had been made and entered before ordinance No. 30,864 was passed. Under these facts, the city could not abandon the proceedings under the first ordinance. *State ex rel. Murray v. Herdlick,* 73 Wash. 301, 131 Pac. 1139; *Spokane v. Pittsburg Land & Imp. Co.,* 73 Wash. 693, 132 Pac. 633. We are satisfied that the second ordinance was not intended to repeal the first ordinance, and that the proceedings under the second ordinance were abandoned and, therefore, did not affect the proceedings which were had under the first ordinance.

It is argued on the part of the state that the assessment against the armory site was not authorized, and was therefore invalid. The statute provides with reference to the assessment of state lands for benefits, at Rem. 1915 Code, § 6875, that all lands of the state, except tide lands, situated within the limits of any incorporated city, "may be assessed

and charged for the cost of local improvements specially bene-
fiting such lands which may be ordered by the proper au-
thorities of any such city."

It is conceded that these lands are not tide lands. The
lands upon which the armory site is situated are uplands
within the corporate limits of the city, and, therefore, under
this provision, it seems are liable for assessment for the bene-
fits by direct authority of the statute.

It is argued by the state that the words "local improve-
ments" mean "actual physical improvement of the land by
the formation of an improvement district under the local
improvement act." But we are satisfied that this is too nar-
row a construction of the words "local improvements" if im-
provements are made upon streets and not upon the land
itself, which improvements may benefit the state lands. We
are satisfied it was the intention of the legislature that state
lands should be liable for the special benefits accruing to the
state lands by reason of the improvement.

In 1 Page and Jones, Taxation by Assessment, § 286, it
is said:

"The term 'local improvement' thus used has substantially
the same meaning as that which is already discussed. It is
said to be a public improvement by which the realty adjoin-
ing or near the locality of such improvement is especially
benefited, or one which is confined to a locality and enhances
the value of adjacent property in addition to the benefits
which it confers upon the public generally. 'A local improve-
ment within the meaning of the law is an improvement which
by reason of its being confined to a locality enhances the
value of property situated within the particular district, as
distinguished from benefits diffused by it throughout the mu-
nicipality.' "

We think this is the correct rule.

It is further argued by the *Attorney General* that the pro-
visions of Rem. 1915 Code, § 6877, which make it the duty
of the city treasurer, upon approval and confirmation of the
assessment roll for any local improvement, to certify a state-

ment of the lands and the amount thereof to the commissioner of public lands, or to the state board of control, are limited by the following proviso:

"Provided, that no city . . . shall have jurisdiction to make such local improvement or levy an assessment against any of the lands of the state of Washington until notice of the making of such proposed improvement and the fixing of the time for hearing and confirming the same by the city . . . has been served upon the land commissioner or the board of control, as the case may be. . . ."

It appears that no notice of *intention* to make the proposed improvement was served upon the land commissioner or the board of control prior to the passage of the condemnation ordinance; and it is claimed, for that reason, the city had no jurisdiction to make an assessment against the property of the state. It also appears that, before the assessment was made, the state had notice thereof, and appeared at the hearing upon the assessment roll and objected thereto. At the time the ordinance was passed, it was apparently not known that the improvement would affect the property of the state. But when it was determined that the property of the state was specially benefited, notice was given to the state, or at least the state appeared at the hearing upon the assessment roll and objected thereto upon the ground that the city had no authority to levy an assessment for special benefits upon state lands. We think this was sufficient notice under the statute. All rights of the state were preserved, and it had an opportunity to be heard, and was heard upon its liability to pay for the special benefits, or to object to the assessment for special benefits upon its property.

We find no error in the record. The judgment will therefore stand affirmed.

Morris, C. J., Ellis, Main, and Holcomb, JJ., concur.