[No. 21965. Department One. March 17, 1930.]

FRANK C. PAINE *et al., Appellants,* v. THE STATE OF
WASHINGTON *et al., Respondents.*[1]

[1]Reported in 286 Pac. 89.

32

*Tustin & Chandler,* for appellants Paine *et al.*

*Chas. W. Greenough, A. O. Colburn,* and *Del Cary Smith, Jr.,* for appellant Spokane County.

*The Attorney General, B. B. Adams,* and *E. W. Anderson, Assistants,* for respondents.

MILLARD, J.—This action was instituted to establish as a lien against certain state land a certificate of delinquency issued by the county of Spokane for drainage district assessments. By their amended complaint the plaintiffs prayed, if enforcement otherwise could not be had, that the state land commissioner be required to certify the assessments to the state auditor for certification to the state legislature; and, in the alternative, if the delinquency certificate was invalid, recovery thereon from the county of Spokane. The joint demurrer of the state and of the state land commissioner to the complaint was sustained. The demurrer of the county was overruled. The plaintiffs

electing to stand upon their complaint and the defendant county refusing to further plead, judgment was entered dismissing the action as to the state and the state land commissioner and awarding recovery to the plaintiffs against the county of Spokane. Defendant county and the plaintiffs appeal from that part of the judgment denying relief against the state and against the state land commissioner. The county also appeals from the judgment against it in favor of the plaintiffs.

Under the provisions of the Laws of 1895, ch. 115, p. 271, Reorganized Drainage District No. 1, in Spokane county, was formed December, 1913. Within the boundaries of the district, is a quarter section of land owned by the state. At that time no contract for sale of its tract of land had been made by the state. Notice of the making of the proposed drainage improvement and the fixing of the time of the hearing and the confirming of same by the district was served upon the auditor of Spokane county as prescribed by § 11, ch. 115, Laws of 1895, p. 279, but notice was not served upon the land commissioner as required by § 6, ch. 154, Laws of 1909, p. 598.

On June 9, 1914, subsequent to the formation of the district, proceedings were instituted in the superior court for Spokane county for the assessment of damages and benefits to accrue by reason of the proposed improvement. Pursuant to § 11, ch. 115, Laws of 1895, p. 279, reading as follows:

"In case the land . . . sought to be appropriated, or which it is claimed will be benefited by such improvement, is state, tide, school or county land, the summons shall be served on the auditor of the county in which the land . . . sought to be appropriated, or which it is claimed will be benefited, is situated,"

the state was made a party defendant in that proceed-

ing by the service of summons and complaint upon the auditor of Spokane county. The jury found that, by reason of the improvement, the maximum benefits accruing to the state's land would be $1,153.28. The state was, at the same time, awarded $712.41 as damages for a right of way for a ditch through the quarter section in question, and through an adjacent quarter section owned by the state. Judgment was entered on the verdict May 28, 1915. Transcript of the proceedings and judgment was filed with the auditor of Spokane county as required by § 1, ch. 242, Laws of 1907, p. 669, and entry was made upon the tax rolls of the assessments against the lands benefited. The drainage commissioners thereafter entered an order designating the times when and the amounts in which the assessments were payable.

A copy of the decree was filed in the office of the state land commissioner, who, on May 12, 1916, issued his certificate acknowledging the filing of the same and the receipt by him of the damage award of $712.41. While not alleged in the complaint, the procedure was in compliance with the provisions of § 1, ch. 165, Laws of 1909, p. 625, Rem. Comp. Stat., § 928, reading as follows:

"When a decree is entered appropriating lands owned by the state, or in which the state has an interest, before any such decree shall be effective, the plaintiff shall cause to be filed in the office of the commissioner of public lands a certified copy of such decree, together with a plat of the lands appropriated and contiguous thereto, in form and substance as prescribed and required by the board of state land commissioners, showing in detail the lands appropriated, together with the amount of damages fixed and awarded in the decree. Upon receipt of such decree, plat and damages, the commissioner of public lands shall examine the same, and if he shall find that the final decree and proceedings comply with the original petition and notice and

any amendment duly authorized, and that no additional interest of the state has been taken or appropriated through error or mistake, he shall cause notations thereof to be made upon the abstracts, records and tract books of his office, and shall issue to the plaintiff his certificate, reciting compliance, in substance, with the requirements of this act, particularly describing the lands appropriated, and thereupon the appropriation shall become effective and the commissioner of public lands shall forthwith transmit the amount received as damages to the state treasurer, as in case of sale of land, and the subdivision of land through which such right of way is appropriated shall thereafter be sold or leased subject to the right of way."

The $712.41 was paid from the proceeds of bonds issued by the drainage district, and the state has ever since retained the money.

The state entered into a contract January 7, 1919, to sell the quarter section in question to Charles Tritt, who had not at the time of the trial of this cause paid in full the purchase price and to whom a deed had not issued. The assessments, which were payable in ten annual installments extending from 1915 to 1924, inclusive, were not added to the purchase price of the land.

On January 6, 1927, the assessments not having been paid, the county treasurer's certificate of delinquency therefor was issued to appellants Paine and Malott for which they paid to the county $3,002.55 principal and interest. Under the terms of the certificate, the county guaranteed the refund to the purchasers of the amount paid, with interest, if the certificate should be declared void. The land commissioner refused to recognize the assessments as a charge against the state's land or as an obligation of the state, and refused to certify any of the assessments to the state auditor for certification to the state legislature. Purchaser Tritt also refused

to pay any of the assessments. Paine and Malott thereupon brought this action against the state, the land commissioner and Spokane county, which resulted as above stated.

The title to the state's land within the drainage district was in the state at the time of the assessment for the improvement. No question is presented by this appeal as to the liability of Tritt (who contracted with the state in 1919 for the purchase of the land) for payment of the assessments.

Counsel for appellants contend that § 6, ch. 154, Laws of 1909, p. 598, does not apply to assessments imposed under the procedure prescribed by ch. 115, Laws of 1895, p. 271, that ch. 115, Laws of 1895, p. 271, is a special act under the provisions of which the drainage district, by service of notice upon the county auditor, acquired jurisdiction to assess the state's land; and that ch. 154, Laws of 1909, p. 596, is general in its nature and to hold § 6 thereof applicable would be to repeal by implication a portion of a special statute by a subsequent general statute.

The rule is fundamental, and so uniformly recognized that we refrain from citation of supporting authorities, that statutory authority to make the assessment is essential to the validity of a drainage or other local improvement assessments against lands of the state. It follows that the assessment would be invalid if the assessing district did not strictly comply with the conditions prerequisite to jurisdiction to impose the assessment. By ch. 115, Laws of 1895, p. 271, entitled, "Establishment and Organization of Drainage Districts," the legislature expressly granted to drainage districts the power to assess state lands for drainage improvements. The pertinent sections of that statute read as follows:

"All state, county, school district or other lands be-

longing to other public corporations, requiring drainage shall be subject to the provisions of this chapter, and such corporations, by and through the proper authorities, shall be made parties in all proceedings herein affecting said lands, and shall have the same rights as private persons, and their lands shall be subject to the right of eminent domain the same as the lands of private persons or corporations." Laws of 1895, p. 294, § 35 (Rem. Comp. Stat., § 4335).

"In case lands belonging to the state, county, school district or other public corporations are benefited by any improvement instituted under the provisions of this chapter, all benefits shall be assessed against such lands, and the same shall be paid by the proper authorities of such public corporations at the times and in the same manner as assessments are called and paid in cases of private persons, out of any general fund of such corporation." Laws of 1895, p. 295, § 36 (Rem. Comp. Stat., § 4336).

"In case the land, real estate, premises or other property sought to be appropriated, or which it is claimed will be benefited by such improvement, is state, tide, school or county land, the summons shall be served on the auditor of the county in which the land, real estate, premises or other property sought to be appropriated, or which it is claimed will be benefited, is situated." Laws of 1895, p. 279 (Rem. Comp. Stat., § 4309).

The drainage district complied with all of the terms of the 1895 statute, including that of service of notice upon the auditor of Spokane county of the making of the improvements and the fixing of the time for hearing.

Chapter 154, Laws of 1909, p. 596, is entitled, "Relating to Assessing of State Lands for Local Improvements," and requires, as a condition precedent to jurisdiction to assess the state's land, that the service of notice shall be upon the state land commissioner.

" . . . no city, town, diking or drainage district shall have jurisdiction to make such local improvement

or levy an assessment against any of the lands of the state of Washington until notice of the making of such improvement and the fixing of the time for hearing and confirming the same by the city, town, diking or drainage district has been served upon the land commissioner or the board of control as the case may be. Said notice shall be served at least twenty days before the time fixed for said hearing, and an acceptance in writing by said land commissioner or the secretary of the said board of control, duly filed with said city, town, diking or drainage district, shall be deemed and considered due proof of such service.'' Laws of 1909, p. 598, § 6.*

We do not lose sight of the rule that repeals by implication are not favored, and that the statute will not be held to have repealed a preceding statute by implication when the two can stand together. However, where, as in the case at bar, the two statutes prescribe different and inconsistent rules of action about the same thing, and are in conflict, the later statute prevails. Holding that the general act would repeal the earlier special act where the intention of the legislature plainly appears to be to that effect, we said, in *State ex rel. Whatcom County v. Purdy,* 14 Wash. 343, 44 Pac. 857:

''But, even if the act of February 3, 1886 (Laws 1885-6, p. 108), were a special law, it does not necessarily follow that it could not be repealed by the provisions of the general act; for the rule is that, if by the terms of the general law it becomes evident that the intention of the legislature was to repeal the special law, it is the duty of the courts to hold the special law repealed. It was said by this court, in *Northern Pacific R. R. Co. v. Haas,* 2 Wash. 379 (26 Pac. 869), that,

'' 'As a rule it will not be held that a special act is repealed by implication by a general one upon the

same subject. The intention of the legislature, however, in enacting the several laws, is what is to be arrived at; and, if it sufficiently appears that it was intended that a subsequent general law should supersede all prior legislation upon the same subject, general or special, though not expressly so stated, effect should be given to such purpose.' ''

In *Germond v. Tacoma*, 6 Wash. 365, 33 Pac. 961, in rejecting the contention that a general act relating to local improvements in cities does not supersede provisions theretofore applying to first class cities under a special act, it is stated:

''The general proposition of law as thus contended for by the appellant is too well settled to be longer open to question. The reason for the rule is that it will not be presumed that the legislature when enacting a general law had in mind every special law upon the same subject, and for that reason to prevent the legislature from doing that which it had no intention to do, it is necessary to hold that such general acts have no effect upon special ones though covering the same subject matter.

''The real question, however, in the investigation of acts of this kind, is to determine the intention of the legislature, and if an act general in terms contains such reference to special acts as to show an intent on the part of the legislature thereby to repeal or change them, such intention must have force, notwithstanding the rule above mentioned. An act the most general in its nature may, by a special reference to some particular thing or class of things, show clearly an intent on the part of the legislature to make such general act the rule as to such particular thing or class, and when this appears, the intent of the legislature thus manifested must be given effect by the courts.''

The 1909 statute is clearly within this rule. The intention of the legislature to apply the act to drainage districts organized under the act of 1895 is manifested by language the meaning of which cannot be misunderstood. Section 4 of the 1909 act specifically refers to

assessments against state lands situated "within the limits of any incorporated city, town, dike or drainage district." Like language is employed in §§ 5 and 6 of the act.

Authority to include state lands within drainage districts is conferred by Laws of 1895, p. 294, § 35. Section 36 of the same statute provides that assessments against state lands shall be paid out of the general fund. If, as contended by appellants, the act of 1909 is inapplicable to the proceedings for assessment of state land for drainage improvements, ch. 74, Laws of 1907, p. 125 (Rem. Comp. Stat., § 4478), is the only statute upon which the appellants can rely for certification of the assessments. By the 1907 statute, the county treasurers were required to serve upon the land commissioner a list of all state lands against which drainage assessments and the amount thereof had been levied. The land commissioner was then required to certify the list to the state auditor, who was required to draw warrants upon the state general fund for the payment of the assessments. By § 6, ch. 154, Laws of 1909, p. 598, the county or improvement district treasurer is required to serve the list upon the state land commissioner who certifies same to the state auditor who in turn certifies

"  . . . to the legislature the amount of all local improvement assessments charged against such lands of the state, and the legislature shall provide for the payment of the same, with interest, by appropriation out of the general fund of the state  . . ."

The prayer of the appellants that the land commissioner be required to certify the assessments to the state auditor for certification to the state legislature is inconsistent with their contention that the act of 1909 (which superseded the 1907 act) is not applicable

to the proceedings for assessment of state lands within the drainage district.

By § 6, ch. 154, Laws of 1909, p. 598, the legislature affirmatively enacted a new rule, requiring, as a condition precedent to jurisdiction to assess state lands for drainage or other local improvements, service upon the state land commissioner of notice of proceedings for the formation of drainage districts. That section repealed the provision of § 11, ch. 115, Laws of 1895, p. 279, prescribing service of notice upon the county auditor. Notice of intention to make the proposed improvement not having been served upon the state land commissioner, and no opportunity given to the state to be heard upon its liability to pay for the special benefits or to object to the assessment for special benefits to its land, jurisdiction to assess the state's land was not acquired; therefore the assessments against the state's land are invalid. It logically follows that the state land commissioner can not be compelled to certify the assessments to the state auditor.

■■ Appellants Paine and Malott next contend that, by acceptance and retention of the award of damages for appropriation of the right of way for a drainage ditch through the state's land, and by acceptance without protest of the benefits of the drainage improvement to the state's land, the state and the state land commissioner are estopped to deny the validity of the drainage improvement assessments.

The award to the state of damages for a right of way for a drainage ditch was independent of any assessment for benefits. A copy of the decree in the eminent domain proceedings was filed by the drainage district with the state land commissioner as required by Laws of 1909, ch. 165, p. 625, § 1; Rem. Comp. Stat., § 928. The district thereby acquired title to the land taken. Regardless of § 6, ch. 154, Laws of 1909, p. 598,

the improvement district had authority to condemn for rights-of-way. The receipt by the land commissioner of the award of $712.41 for damage in the condemnation action did not put the state upon inquiry that its land was being assessed for benefits. The state was entitled to the award regardless of the assessment for benefits of the lands in the district. The improvement district paid for what it took under the decree, and ''no estoppel arises where the person accepting the benefits is entitled thereto regardless of the transaction in question.'' 21 C. J., p. 1207, § 208.

The decree entered in the eminent domain proceedings May 28, 1915, found that the benefits to the state's land amounted to $1,153.28 and that the damages for drainage ditch right of way were $712.41. The finding of benefits and award of damages were included in the same judgment. The statute (§ 1, ch. 165, Laws of 1909, p. 625; Rem. Comp. Stat., § 928) requires that a copy of the judgment be filed with the state land commissioner. This was done May, 1916, about one year later. It does not appear, however, that, upon the approval and confirmation of the assessment roll for the drainage improvement, the assessments were ever certified to the land commissioner as required by § 6, ch. 154, Laws of 1909, p. 598, which reads as follows:

''Upon the approval and confirmation of the assessment roll for any local improvement ordered by the proper authorities of any . . . drainage district, the treasurer of such . . . drainage district shall certify and forward to the commissioner of public lands of the state of Washington . . . a statement of all the lots or parcels of land . . . held or owned by the state and charged on such assessment roll for the cost of such improvement . . . the commissioner of public lands shall charge against each such lot or parcel of land owned or held by the state for

sale the amount of the local assessment so certified by such treasurer, and shall then certify said statement to the state auditor . . . and the state auditor at the next session of the legislature shall certify to the legislature the amount of all local improvement assessments charged against such lands of the state, and the legislature shall provide for the payment of the same, with interest, by appropriation out of the general fund of the state; *Provided,* That no . . . drainage district shall have jurisdiction to make such local improvement or levy an assessment against any of the lands of the state of Washington until notice of the making of such proposed improvement and the fixing of the time for hearing and confirming the same by the . . . drainage district has been served upon the land commissioner.''

The filing with the land commissioner May, 1916, of a copy of the decree, in which was included the finding as to benefits and the award of damages, is not a compliance with the requirements of notice to the land commissioner and the certification to the same official of the assessments as provided by § 6, ch. 154, Laws of 1909, p. 598. That decree did not levy any assessments. Our examination of the complaint does not disclose any allegation of certification to the state land commissioner showing the time and order of payment of assessments. True, it is alleged that transcript of the eminent domain proceedings and judgment was filed with the county auditor; that entry was made upon the tax rolls of the assessments against the lands benefited and that the drainage commissioners thereafter entered an order designating the times when and the amounts in which the assessments were payable. That procedure was pursuant to § 1, ch. 242, Laws of 1907, p. 669; Rem. Comp. Stat., § 4316, which reads as follows:

''Upon the entry of the judgment upon the verdict of the jury the clerk of said court shall immediately pre-

pare a transcript, which shall contain a list of the names of all the persons and corporations benefited by said improvement and the amount of benefit derived by each, respectively, and shall duly certify the same, together with a list of the lands benefited by said improvement belonging to each person and corporation, and shall file the same with the auditor of the county, who shall immediately enter the same upon the tax-rolls of his office, as provided by law for the entry of other taxes, against the land of each of the said persons named in said list, together with the amounts thereof, and the same shall be subject to the same interest and penalties in case of delinquency as in case of general taxes, and shall be collected in the same manner as other taxes and subject to the same right of redemption, and the lands sold for the collection of said taxes shall be subject to the same right of redemption as the sale of lands for general taxes: *Provided,* that said assessments shall not become due and payable except at such time or times and in such amounts as may be designated by the board of commissioners of said drainage district, which designation shall be made to the county auditor by said board of commissioners of said drainage district, by serving written notice upon the county auditor designating the time and the amount of the assessment, . . ."

In *Trimble v. Seattle,* 93 Wash. 472, 161 Pac. 381, the state land commissioner was not served with notice of intention to make the proposed improvement; however, the state *appeared* at the hearing upon the assessment roll and objected to the assessment of its property. That case is clearly distinguishable from the case at bar, where no opportunity was afforded the state to appear and object to the assessment of its land.

Assessments for drainage or other local improvements cannot be made against lands belonging to the state in the absence of statutory authority. In such a case the state would not be estopped to challenge the

validity of assessments against its lands for drainage improvement. The legislature granted authority to assess state lands for drainage and other local improvements. Only by strict compliance with the terms of that grant, could the assessing district exercise the power conferred. One of the purposes of the 1909 statutory requirements of notice and certification to the land commissioner is that the assessments may be added to the appraised value of the land when the state sells same.

■ The drainage district did not comply with the jurisdictional prerequisites and the state's land was sold to Tritt free of assessments. It will be presumed that the land commissioner would have performed his duty and added the assessments to the purchase price of the land had notice been given and certification made by the district as required by the statute. Having sold the land free of assessments, the state can not now require Tritt to pay same. It would be inequitable to penalize the state and compel it to bear a loss for which it is not responsible. Not having been put upon inquiry, and thereafter standing by and acquiescing in the drainage improvement, and the district not having complied with the conditions precedent to jurisdiction to impose the assessment against the state's land, the state is not estopped to deny the validity of the assessments. The drainage district having caused the loss, it must bear the burden.

■ Appellant county contends that the judgment entered against it in the amount of $3,002.55 should not have been entered for more than that portion of the assessment which is charged against the land of the state within the drainage district; that the certificate of delinquency is a proper charge against the remainder of the lands within the drainage district.

True, the question on this appeal is restricted to the

validity of the assessments against the state's land within the district. Those assessments are void. By its demurrer, the appellant county admitted as true the allegations of the complaint that on January 6, 1927, the county issued to Paine and Malott certificate of delinquency No. 15143 against the state's land for assessments in the principal sum of $2,014.75, and interest in the sum of $987.30, or a total of $3,002.55,

". . . which amount was then and there paid by said plaintiffs to said county. That said certificate bore the following provision: 'And the said county of Spokane hereby guarantees that if for any irregularity of the taxing officers this certificate be void, then the said county will repay to the holder hereof,' "

the amount paid for the certificate, with interest thereon at the rate of six per cent per annum from the date of the certificate until paid.

The complaint clearly alleges that the amount paid by Paine and Malott for the certificate of delinquency was for unpaid assessments with interest thereon, against the state's land within the drainage district. There is nothing appearing upon the face of the complaint indicating otherwise. The appellant county elected to stand upon its demurrer which admitted the allegation to be true; therefore, under the guaranty of the county to refund the amount paid if the delinquency certificate were declared void, the judgment in favor of appellants Paine and Malott against the county of Spokane should be, and it is, affirmed.

MITCHELL, C. J., PARKER, TOLMAN, and BEALS, JJ., concur.