No. 30,351.

Dr. M. G. Slocum, doing business as The Copeland Medical Institute, *Appellant,* v. The City of Fredonia et al., *Appellees.*

(8 P. 2d 332.)

Opinion filed
March 5, 1932.

*Ross B. Smith,* of Erie, and *Claude M. Brobst,* of Chanute, for the appellant.
*W. H. Edmundson,* of Fredonia, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to enjoin the enforcement of an ordinance of the city of Fredonia. Judgment was for defendant. Plaintiff appeals.

Appellant was given a license to practice medicine in Kansas in 1896. He styles himself a traveling physician and specialist. His residence is Kansas City, Mo. He maintains a business in that city known as the Copeland Medical Institute. He also operates a chemical manufacturing plant there, where he manufactures the medicines used in his practice. In the past he has been accustomed to make periodic visits to Fredonia for the purpose of practicing medicine. He would advertise these visits in the papers of Fredonia and by means of handbills.

The ordinance, the enforcement of which is sought to be enjoined, classifies occupations, provides for the city clerk issuing licenses to individuals to carry on certain occupations, and fixes a license for traveling specialists and physicians of fifty dollars a day. The ordinance provides a punishment for engaging in any of the classified occupations without a license.

On a certain day when appellant was engaged in practicing his profession in Fredonia the chief of police and city attorney advised him that if he persisted in practicing as a traveling specialist and physician in Fredonia without a license he would be arrested and fined. He stopped practicing and filed this suit. He alleged facts about as given here, and particularly in describing his method of doing business, as follows:

"That he is a duly licensed and authorized physician in the state of Missouri, and that he extends his work as a physician into the state of Kansas; that he makes business trips to various cities in the state of Kansas, and in such cities and at such times he confers with and consults with prospective patients; that if his consultations and examinations find that the party is needing medical or professional treatment he prescribes for them the services and medicines needed; that when it is determined that certain medicines are needed by the patient he will take the money for the needed medicine and

have it shipped from his place of business in Kansas City, Mo., called the 'Copeland Medical Institute'; that the plaintiff sends medicines and medical advice through the United States mails; that in carrying on his business of conferring and consulting with prospective patients the plaintiff frequently goes to the city of Fredonia, Kan."

The petition further alleged that the enforcement of the ordinance would be in violation of the interstate commerce clause of the constitution, and further that the fee of fifty dollars a day is prohibitive and prohibits the following of the profession of traveling specialist in Fredonia. The city answered denying that appellant was engaged in interstate commerce or that the license fee provided was unreasonable or prohibitive.

Upon these issues trial was had to the court. The result was a general finding and judgment in favor of defendant refusing to enjoin the enforcement of the ordinance. From that judgment this appeal is taken. The evidence showed a state of facts about as heretofore set out. At the conclusion of the evidence and before final judgment the city amended the ordinance as to the amount of license required and as to the distinction it drew between traveling specialists and physicians and those not traveling so as to meet these objections. In reaching the final conclusion the court considered the ordinance as amended. Obviously it would be of no avail for this court to consider and pass on objections to an ordinance which have been cured by amending the ordinance. The brief of appellant states and counsel made the statement at the time the case was argued that Doctor Slocum would not pay any license whatever and that the only question being urged was that of interstate commerce. Hence the trial court did not consider and pass on the question of the unreasonableness of the fee of fifty dollars a day or the discriminatory features of the ordinance as first passed, and the only question the district court passed on and the only question considered and passed on by this court in this opinion is that of whether the business of Doctor Slocum comes under the protection of the interstate commerce clause of the constitution. He relies on the decisions of the supreme court of the United States, which have held that—

"All interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test of interstate commerce; and every negotiation, contract, trade and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce." (*Butler Bros. Shoe Co. v. U. S. Rubber Co.,* 84 C. C. A. 167, 156 Fed. 1, 17.)

Appellant argues that the transactions he has with persons in Fredonia are purely incidental to the interstate business of shipping the medicine from Kansas City, Mo. In this connection he points out that no remuneration is paid him unless after examining the patient he decides that some of his medicines will help the patient and ships them from Kansas City.

There is another principle of constitutional law as well established as the rule laid down in *Butler Bros. v. U. S. Rubber Co.*, supra; that is, that there are certain fields of legislative action not delegated to congress, but reserved to the states for such action and control as the several states see fit to exercise. In these fields congress has no power to enact laws and the legislatures of the states and their subordinate municipalities are supreme. (*Linder v. United States*, 268 U. S. 5.) This power extends, also, to the right to tax.

"A state may in the exercise of its taxing power lay a tax on the privilege of following a certain profession or occupation. That medicine is a profession the followers of which may properly be made to pay a professional or occupation tax is well settled, whether the state lay the tax directly, or delegate the power to tax physicians to its municipal corporations." (21 R. C. L. 368. See, also, *Village of Dodge v. Guidinger*, 87 Neb. 349.)

Kansas has conferred this authority on the governing bodies of cities of the second class by R. S. 1931 Supp. 12-1650.

The legislature of Kansas has defined the term "practicing medicine." R. S. 65-1005 provides:

"Any person shall be regarded as practicing medicine and surgery . . . who shall prescribe . . . any drug or medicine . . . or who shall use the words or letters 'Dr.,' 'Doctor,' 'M. D.,' . . . or any person attempting to treat the sick or others afflicted with bodily or mental infirmities."

In the case at bar the examination of the patient, the observation of his symptoms and distress, the mental processes, reactions and conclusions of the doctor resulting from such observation and the prescribing of appropriate remedies to correct pathological conditions discovered, all had their situs in Fredonia. These acts had no elements of interstate commerce. They were the acts of Doctor Slocum, not the Copeland Medical Institute at Kansas City. The state has seen fit to regulate the doing of these things by requiring one who does them to have a license to practice medicine. The right of the state to do this Doctor Slocum has recognized by obtaining and filing with the county clerk of Wilson county a license to practice medicine in the state. The city of Fredonia has equally well

recognized authority to license the carrying on of classified occupations within its limits. One of these is that of physician and specialist. That is what the ordinance in question purports to do. No doubt the ordinance provides a license for the practice of law within the corporate limits. No one would have the temerity to say that a lawyer could maintain an office in Fredonia for the purpose of meeting clients on certain days in the week, and then because he maintained a library in Kansas City, Mo., where he wrote his briefs, escape thereby the necessity to procure a license to practice law in Kansas and to pay whatever license fee the ordinance of the city should require. When Doctor Slocum performed the acts alleged in his petition he engaged in the practice of medicine. The source of the medicine he prescribed is immaterial. He might have made it a practice to advise his patients to go to some mineral springs for a cure, or to go to Switzerland for the wonderful sun baths for which that region is famous, or to Colorado for the benefit to be derived from that health-giving climate, and still be practicing medicine within the meaning of R. S. 65-1005. In *State v. Smith*, 233 Mo. 242, 33 L. R. A., n. s., 179, the court said:

"In the main, the cases regard diagnosis as the test to determine whether a practice or treatment is included in the terms 'medicine' and 'surgery.' This is a practical test. A doctor who advises his patient to sleep in the open air is treating him. Such advice, however, is based upon a knowledge of the patient's condition obtained by diagnosis. The defendant professed to be able to ascertain by examination of the patient the cause of his trouble—a result rather beyond that which ordinarily attends the diagnosis of the regular practitioner. The method or extent of the examination is not the controlling feature. When the practitioner makes such examination of the patient as he regards as sufficient to indicate to him the cause of the trouble, and to indicate its proper treatment, he has diagnosed the case." (p. 263.)

What the city charges a license for is practicing medicine, and Doctor Slocum is doing that before he ever fills out a prescription blank or ships any medicine. The authorities agree with the views expressed here of what constitutes practicing medicine. In *State v. Davis*, 194 Mo. 485, 4 L. R. A., n. s., 1023, it was said:

"A physician is practicing medicine within the state within the meaning of a registry law where he periodically appears at a hotel within the state and for compensation sees and prescribes for patients, although he lives in another state, where his prescriptions are filled and forwarded by express to the patient."

The doctor in that case was doing just about what Doctor Slocum

was doing in this case. In *State v. Douglas,* 124 Kan. 482, 260 Pac. 655, a conviction of a doctor for practicing medicine without a license was upheld. The defendant in that case was carrying on his practice in about the same manner as Doctor Slocum.

Finally, it may be said the acts performed by Doctor Slocum in Fredonia constituted practicing medicine regardless of where his prescriptions were filled. The municipality has the authority to require one practicing medicine within its limits to pay a license fee. The regulation of the practice of medicine is a field of legislative control over which the federal government has no jurisdiction.

Since these things appear from the record in this case, we conclude that the ordinance in question does not violate the interstate commerce clause of the constitution, and the judgment of the trial court is affirmed.