[No. 27265.   Department Two.   November 25, 1938.]

THE STATE OF WASHINGTON, *Respondent,* v. ALEXANDER KARSUNKY, *Appellant.*[1]

[1]Reported in 84 P. (2d) 390.

88

*E. J. Hackett, James O. Blair,* and *Arthur C. Bannon,* for appellant.

*Eugene G. Cushing* and *D. Dewitt Jones,* for respondent.

MILLARD, J.—Defendant was charged by information, on two counts as follows, of the crime of homicide growing out of the death of a person resulting from defendant's improper treatment of a disease with which

his patient was afflicted; and of the misdemeanor of practicing medicine without a license:

## "Count I

"That he, the said Alexander Karsunky, on or about the 21st day of December, 1937, in the County of Clark, State of Washington, did, then and there, wilfully, unlawfully and feloniously and without excuse or justification, kill and cause the death of William Hahn, in this, to-wit, that he the said Alexander Karsunky, on or about the 1st day of December, 1937, in the County of Clark, State of Washington, did, then and there, wilfully, unlawfully and feloniously and without excuse or justification, and through culpable negligence, gross ignorance and lack of ordinary knowledge of medicine and surgery, and with utter disregard for the health, safety and life of the said William Hahn, and representing himself to be a duly qualified physician and doctor, did, then and there, prescribe treatment and diet for the said William Hahn, who was then and there afflicted with the disease known as diabetes, by then and there, advising, prescribing and directing the said William Hahn to follow said diet and to refrain and abstain from taking insulin, which diet was injurious and deleterious to the life, health and safety of said William Hahn, and which insulin was necessary to preserve the health, safety and life of said William Hahn, and as the direct and proximate cause and result of said treatment, advice and prescription, the said William Hahn died on the 21st day of December, 1937, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Washington.

## "Count II

"That he, the said Alexander Karsunky, on or about the 21st day of December, 1937,. in the County of Clark, State of Washington, did, then and there, willfully and unlawfully practice and hold himself out as practicing medicine in this, that he, the said Alexander Karsunky, then and there, did, treat and pretend to treat and heal one William Hahn for disease and physical condition, to-wit, by the use of drugs, medical preparations and advice without having at the time of so doing a valid

unrevoked certificate issued by the Board of State Medical Examiners of the State of Washington, or by the State Director of Licenses of the State of Washington, licensing the said Alexander Karsunky to practice medicine within the State of Washington, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Washington."

Trial of the cause to the court, sitting without a jury—defendant waived trial by jury—resulted in conviction of the defendant of the crime of manslaughter on the first count, and on the second count of the misdemeanor of practicing medicine without a license. On the first count, the defendant was sentenced to confinement in the state pentitentiary for a maximum period of twenty years; and on the second count, the defendant was given a suspended sentence of sixty days in the county jail. Defendant appealed.

■■ Counsel for appellant first contend—and cite in support of that position *State v. McFadden*, 48 Wash. 259, 93 Pac. 414, 14 L. R. A. (N. S.) 1140—that the information fails to state a crime. The authority cited is not apposite. That case is to the effect that a physician may be charged with manslaughter by causing the death of a sick child, by advising a diet which results in its starvation, under a statute which treats all persons concerned in the commission of an offense as principals, although it was the mother of the child who actually withheld the food from the child in the absence of the accused. The information was held insufficient on demurrer, as there was not such a connected chain of facts alleged as showed starvation as the necessary and certain result of the physician's directions.

"The information epitomized says that the child was starved by the withholding of food through appellant's advice; not all food but merely some kinds of food,

without specifying what kinds or what quantities were directed or given. Such a statement of facts is not sufficient to show that appellant's directions caused the death of the child."

In the case cited, the question of sufficiency of the information was raised by demurrer. In the case at bar, the appellant pleaded to the information and went to trial without challenging the sufficiency of the information. That he fully understood the nature of the offenses which he was charged to have committed is clear from his defense to the effect that he sold to his patient preparations, which were defined as drugs and medical preparations, and that he could cure diabetes and had medicine which would cure that disease.

The language of the information was sufficient to apprise the appellant with reasonable certainty of the nature of the accusation so that he would be enabled to avail himself of his acquittal or conviction as a protection against further prosecutions for the same offense. In view of that fact and the further fact that the sufficiency of the information is questioned for the first time on appeal, the assignment is without merit. *State v. Randall*, 107 Wash. 695, 182 Pac. 575; *State v. McKenzie*, 184 Wash. 32, 49 P. (2d) 1115; and *State v. Taylor*, 196 Wash. 37, 81 P. (2d) 853.

■ The contention that count two is defective, in that it fails to allege that appellant was a resident of Clark county, is also without merit. Appellant was charged, under Rem. Rev. Stat., § 10018 [P. C. § 3471], with the crime of practicing, attempting to practice, or holding himself out as practicing, medicine without having at the time of the commission of the offense a license to practice medicine and surgery in this state. Count two definitely alleges that the offense was committed by appellant in Clark county. In all that is material, the count is in the language of the statute

(Rem. Rev. Stat., § 10018), and that count is not vulnerable to the attack made on it by appellant. *State v. Low,* 192 Wash. 631, 74 P. (2d) 458.

■■ Counsel for appellant argue that the evidence is not sufficient to sustain conviction of appellant on either count.

The practicing of medicine includes the advice, whether oral or in the form of a written prescription, of a physician to his patient as to what to do or what the patient should refrain from doing. Diagnosing, prescribing (orally or in writing), and treating ailments are constituent parts of "practicing medicine." If one is so engaged, or holds himself out as being so engaged, he is guilty of violating the statute (Rem. Rev. Stat., § 10018) if "at the time of so doing" he does not have "valid, unrevoked certificate" authorizing him to practice medicine and surgery in this state. See *People v. T. Wah Hing,* 79 Cal. App. 286, 249 Pac. 229; *State v. Ghadiali,* 6 W. W. Harr. (Del.) 308, 175 Atl. 315; *People v. Mash,* 235 Ill. App. 314; *State v. Huesser,* 205 Iowa 132, 215 N. W. 643; *State v. Baker,* 212 Iowa 571, 235 N. W. 313; *Slocum v. Fredonia,* 134 Kan. 853, 8 P. (2d) 332, 82 A. L. R. 1384; and *State v. Davis,* 194 Mo. 485, 92 S. W. 484, 4 L. R. A. (N. S.) 1023.

If the proximate cause of the death of Hahn was the advice and treatment given by appellant to Hahn, unless Hahn's death was justifiable or excusable, appellant is guilty of manslaughter under Rem. Rev. Stat., § 2395 [P. C. § 9000]. See *State v. McFadden,* 48 Wash. 259, 93 Pac. 414, 14 L. R. A. (N. S.) 1140, to the effect that a physician may be charged with manslaughter by causing the death of a sick child by advising a diet which results in starvation of the child. See, also, *State v. Hazzard,* 75 Wash. 5, 134 Pac. 514, respecting conviction of one assuming to act as a physician who starved her patients.

The evidence, which is summarized as follows, is sufficient (if accepted by a jury as true) to sustain conviction of the appellant of the crime of manslaughter and of the misdemeanor of practicing medicine without a license:

William Hahn, a strong, robust man thirty-three years old engaged in heavy manual labor, was a resident of Clark county. For a period of three years, with the exception of a few days immediately preceding his death, he was a patient of Dr. Edgar Anderson, of Portland, Oregon. Because of the disease of diabetes mellitus with which he was afflicted, Hahn was required to follow a strict diet which regulated the intake of carbohydrates, and he was required to take each day about fifteen units of insulin, which he injected by means of a hypodermic needle. Hahn called every two weeks at the office of his physician, who subjected his patient to an examination to ascertain whether he was "free of sugar."

Appellant is a drugless healer, but he does not have a license to practice medicine in this state. He stopped at regular intervals at a hotel in Vancouver and prescribed for persons who called at his room in the hotel. The medicines prescribed by appellant were prepared by some company outside of this state and sold by appellant in the original package to his patients. Appellant was called "Dr. Karsunky" by those who called on him for treatment and medicine. He used the title of "doctor," which had been given to him in various schools of drugless healing he attended, in connection with his literature, labels, diet sheets, and in making appointments with persons desirous of consulting him concerning their ailments.

On December 11, 1937, William Hahn called on appellant in the latter's office (hotel room) in a hotel in Vancouver and on that date became a patient of appel-

lant, who did not give Hahn a physical examination, but did quiz him. Hahn informed appellant that his reason for seeking advice and treatment from appellant was that he had sugar diabetes and that he desired to discontinue the use of insulin. Appellant informed Hahn that he could cure diabetes; that his medicine would cure it, but that his medicine and insulin would not mix. He advised Hahn to discontinue the use of insulin and stated he would send medicine by mail C. O. D. to Hahn. In lieu of the strict diet prescribed by Dr. Anderson, appellant gave a new "diet list" to Hahn. The unrestricted diet prescribed by appellant did not regulate the intake of carbohydrates. Appellant testified that his reason for advising his patient not to take insulin was "because insulin is not human—it is not fit for any dog."

That afternoon (December 11, 1937), Hahn called on Dr. Anderson, but did not advise him that he was under the care of appellant. Dr. Anderson examined Hahn and found he was in "grand condition" and "sugar free." On that date, Hahn discontinued the use of insulin. Two days later, Monday, December 13, 1937, Hahn received by mail the medicines prescribed by appellant and commenced to take same according to the directions sent with the medicines. He worked from Tuesday, December 14th, to Friday, December 17th.

On Saturday, December 18th, he was too ill to depart from his home. On Sunday, December 19th, he was confined to his bed and complained of feeling numb all over. Monday morning, December 20, 1937, Mrs. Hahn called in Dr. Anderson, who found Hahn in a serious condition. He gave Hahn soda to relieve him and advised that Hahn be placed in a hospital. Hahn refused to go to a hospital. That night, however, Mr. Hahn was removed to a hospital in Portland, Oregon. Upon his arrival there, he was placed under an oxygen

tent, given glucose and saline with about forty units of insulin. A blood sugar test was taken; however, the blood sugar report was so high that night that the physician could not get a reading. The next morning, Tuesday, December 21, 1937, Hahn slipped into a comatose condition and during the day more insulin was administered to him. He died that evening. The autopsy disclosed that his death was due to diabetic coma.

There is evidence that the medicines prescribed by appellant are, under the statute, drugs or medicinal preparations; however, the evidence is conclusive that the medicines prescribed and sent by appellant to Hahn had little, if any, therapeutic value; their only effect upon Hahn was psychological. The evidence is over-whelming—contradicted only by appellant—that appellant's treatment of the disease afflicting Hahn—giving him a diet list under which he was permitted to partake of unlimited quantities of carbohydrates and at the same time inducing the patient to discontinue the use of insulin—would inevitably cause the patient's death. The administration of such treatment by appellant was through gross ignorance of the art he assumed to practice.

Five men of experience in the medical profession testified that the only known and accepted treatment of diabetes mellitus is by the use of a restricted carbo-hydrate diet and the use of insulin, depending, of course, upon the severity of the disease; and that to induce Hahn to abstain from the use of insulin in view of "a case of his standing" would be the same as "signing his death warrant," as he absolutely could not live without taking insulin. There is no evidence, other than appellant's testimony, contradicting the testimony of the five experienced physicians. Nor do we know,

nor has anything been called to our attention on which to base judicial notice, to the contrary.

When appellant was prescribing for Hahn and attempting to treat him for the disease of diabetes, without having a license to do so, he was engaged in an unlawful act. He was grossly negligent. in the matter of furnishing to a diabetic patient like Hahn a diet list permitting the patient to eat unrestricted quantities of carbohydrates and at the same time advising and inducing the patient to dispense with the use of insulin. Prior to the time appellant commenced to advise and treat Hahn, the condition of the latter for three years under the treatment of a skillful physician had improved. The properly controlled carbohydrate diet and use of insulin prescribed by Dr. Anderson had Hahn sugar-free and able to take care of his affairs in life just like any other man.

Appellant assumed to treat Hahn for the disease of diabetes mellitus, therefore he was bound to know the nature of the remedies he prescribed and also the treatment—this includes advice respecting use or non-use of anything—he adopted (discontinuance of use of insulin and unrestricted intake of carbohydrates), and he is responsible criminally for the death resulting to the patient from gross ignorance in the application of the treatment. *Barrow v. State,* 17 Okla. Crim. 340, 188 Pac. 351, 9 A. L. R. 207.

An apt authority is *Hampton v. State,* 50 Fla. 55, 39 So. 421, in which the court said:

"The law seems to be fairly well settled both in England and America that where the death of a person results from the criminal negligence of the medical practitioner in the treatment of the case, the latter is guilty of manslaughter, and that this criminal liability is not dependent on whether or not the party undertaking the treatment of the case is a duly licensed practitioner, or merely assumes to act as such, acted with good intent

in administering the treatment, and did so with the expectation that the result would prove beneficial. And that the real question upon which the criminal liability depends in such cases is whether there was criminal negligence. That criminal negligence is largely a matter of degree, incapable of precise definition, and whether or not it exists to such a degree as to involve criminal liability is to be determined by the jury. That criminal negligence exists where the physician or surgeon or person assuming to act as such, exhibits gross lack of competency, or gross inattention, or criminal indifference to the patient's safety, and that this may arise from his gross ignorance of the science of medicine or surgery, and of the effect of the remedies employed, through his gross negligence in the application and selection of remedies, his lack of proper skill in the use of instruments, or through his failure to give proper instructions to the patient as to the use of the medicines; that where the person treating the case does nothing that a skilled person might not do, and death results merely from an error of judgment on his part, or an inadvertent mistake, he is not criminally liable."

The weight of authority is to the effect that criminal negligence exists where the physician or person assuming to act as such exhibits gross lack of competency, and that this may arise from his gross ignorance of the science of medicine and of the effect of the remedy employed or through his gross negligence in the application and selection of remedies. Criminal negligence may arise from failure to give proper instructions to the patient, or the giving, as in the case at bar, of improper instructions to the patient. To induce Hahn to refrain from the use of insulin, which was necessary to preserve his life, is no different in principle than withholding the insulin from him by physical force. Whether by strength of mind or by physical power appellant prevented Hahn from using insulin, the principle is the same.

There is ample evidence from which a jury would be authorized reasonably to conclude that death resulted in the manner charged in the information.

 ██  Counsel for appellant next contend that the proximate cause of Hahn's death was the failure of Dr. Anderson, when called to the Hahn home December 20th, to properly treat Hahn, who was then lapsing into a state of diabetic coma. There is no evidence from which a jury would be authorized reasonably to conclude that the death of Hahn resulted because of Dr. Anderson's failure to do anything.

 ██  It is insisted that courts will take judicial notice of standard publications, treating of medicine and other physiological facts. Our attention is invited to a pamphlet, which was not offered in evidence, published by a manufacturer of insulin in this country. In the oral argument and in their brief, counsel for appellant quote liberally from the pamphlet, which is entitled "Diabetes Mellitus, a Method of Dietetic Management and the Use of Insulin," to support appellant's theory that Dr. Anderson's failure "promptly to institute the precise treatment" needed when coma developed in Hahn was the proximate cause of the death of Hahn.

The rule is that facts which are universally known, and which may be found in encyclopedias, dictionaries or other publications, are judicially noticed, provided they are of such universal notoriety and so generally understood that they may be regarded as forming part of the common knowledge of every person. 1 Jones Comm. on Evidence (2d Ed.), Revised, 799, § 450. Whether the pamphlet, which is not in evidence, is recognized as a standard authority by the medical profession, we do not know.

We can not take judicial notice of facts in that pamphlet, merely because they are printed therein, to

which we may have access. The pamphlet, standing alone, is not competent proof of the statements therein contained. We can not, in the absence of expert testimony or other proof, take judicial notice of the facts recited in the pamphlet.

"Courts will not take judicial notice of facts which are not matters of common and general knowledge. They do not take judicial notice of facts merely because they may be ascertained by reference to dictionaries, encyclopedias, or other publications, nor of facts which the court can not know without resort to expert testimony or other proof." 23 C. J. 59, 60, § 1810.

There is no showing that the treatment by Dr. Anderson, as a physician, of Hahn on December 20th and 21st, was the cause of Hahn's death.

If one unlawfully inflict upon the person of another a wound calculated to endanger or destroy life, it would not be a defense to a charge of unlawful homicide, where death ensues, to show that the wounded person might have recovered if the wound had been more skillfully treated. Even unskillful or negligent treatment of the wound on the part of the wounded person or his physician, which may have aggravated the wound and contributed to the death, does not relieve the assailant from liability. He must, as we said in *State v. Baruth,* 47 Wash. 283, 91 Pac. 977,

" . . . show that the negligent and unskillful treatment was the sole cause of death, before he can escape the consequences of his unlawful act on this ground."

See, also, Annotation 8 A. L. R. 506 *et seq.,* on the subject of liability of one causing personal injury for consequences of negligence, mistake or lack of skill of physician or surgeon.

Counsel for appellant assign as error trial of appellant to the court without a jury. The constitu-

tional provisions (Art. I, §§ 21, 22, state constitution) respecting the right of trial by jury, are not invoked, nor is any argument made (except that § 2309 [P. C. § 9140] is a later enactment than § 2144 [P. C. § 9371], Rem. Rev. Stat.) or authority, other than Rem. Rev. Stat., § 2309, cited in support of the assignment.

Counsel for the state contend that, under Rem. Rev. Stat., § 2144, which has never been repealed or amended, appellant may not now, in view of the fact that he waived trial by jury, complain that he was deprived of any of his constitutional rights.

Rem. Rev. Stat., § 2144, which was enacted by Washington territorial legislature in 1854, reads as follows:

"The defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court, except in capital cases."

Rem. Rev. Stat., § 2309, which was enacted by the Washington state legislature in 1909, reads as follows:

"No person informed against or indicted for a crime shall be convicted thereof, unless by admitting the truth of the charge in his plea, by confession in open court, or by the verdict of a jury, accepted and recorded by the court."

The two acts are in hopeless conflict. While repeals by implication are not favored, irreconcilable acts passed at different times can not stand and the later operates to repeal the former. *Paine v. State,* 156 Wash. 31, 38, 286 Pac. 89. *State v. Giaudrone,* 109 Wash. 397, 186 Pac. 870.

The rule uniformly followed is that, in the absence of statutory authority, one who is charged with the commission of a felony can not, on pleading not guilty, waive his right to trial by jury, or that he can not, by waiver, confer jurisdiction to proceed without a jury. *Commonwealth v. Hall,* 291 Pa. 341, 140 Atl. 626, 58 A. L. R. 1023; *Commonwealth v. Rowe,* 257 Mass.

172, 153 N. E. 537, 48 A. L. R. 762. See Annotations 48 A. L. R. 767 *et seq.,* and 58 A. L. R. 1031 *et seq.*

The question whether, in the absence of statutory authority, one charged with the commission of a felony may waive his right to a trial by jury, is not before us. Under our statute, Rem. Rev. Stat., § 2309, one charged with the commission of a crime may not waive trial by jury unless in his plea he admits the truth of the charge, or in open court confesses his guilt. Not only is there an absence of statutory authority to waive trial by jury; but the right to waive, except in the two instances cited, is taken away.

The appellant is entitled to a trial by jury, a right which was not afforded him; therefore, the judgment is reversed and the cause remanded with directions to grant a new trial.

BEALS, GERAGHTY, and SIMPSON, JJ., concur.

STEINERT, C. J. (concurring in part and dissenting in part)—I concur with the majority in holding that appellant is entitled to a new trial to be had before a jury. I disagree with the majority in holding that the evidence was sufficient to sustain a conviction for manslaughter.