## No. 35,535

THE STATE OF KANSAS, ex rel. THE KANSAS STATE BOARD OF MEDICAL REGISTRATION AND EXAMINATION and the COUNTY ATTORNEY OF DONIPHAN COUNTY, *Appellees,* v. E. B. MARTIN, *Appellant.*

(130 P. 2d 601)

Opinion filed November 7, 1942.

*A. D. Weiskirch, Jr.,* of Topeka, argued the cause and was on the briefs for the appellant.

*C. V. Beck,* of Emporia, argued the cause, and *Wm. H. Strahan,* county attorney, and *Theo. F. Varner,* of Independence, were on the briefs for the appellees.

The opinion of the court was delivered by

HOCH, J.: In November, 1940, in the district court of Doniphan county, the appellant was enjoined from the practice of medicine and surgery. Sometime in 1941 complaint was filed charging him with violating the injunction. After trial by the court, the regularity of which is not attacked, he was found guilty of indirect contempt and on January 6, 1942, sentenced to pay a fine of $100 and to serve sixty days in jail. From such judgment and sentence he appeals. His main contentions are that the court erred in overruling a motion to strike, in admission of incompetent evidence, and that there was no substantial evidence to support the judgment.

The validity of the injunction is not questioned. It is not contended that the appellant'was at any time licensed to practice medicine or surgery or any other of the healing arts in Kansas, although he testified that prior to November, 1940, he had practiced medicine for about twelve years in Troy, Wathena, and other places in this state.

He testified that he had taken training in medicine in New York, Chicago, Indiana and other places; that he never went to medical school in New York but took training in a hospital there as a nurse and helper, but that he was never licensed to practice medicine in New York and was not a registered nurse; that he graduated from a school in South Bend, Ind., but could not give the name of the school; that he was given a license to practice in Illinois in 1888 but that he did not know the number of the license and had not kept it up to date; that he always referred to himself as "Dr. E. B. Martin."

Following the injunction, appellant moved to Kansas City, Mo., where he had an office with a Missouri doctor and "saw patients." He testified that on account of the smoke in Kansas City he suffered from asthma and that he returned to Wathena in April, 1941. He and his wife moved into upstairs rooms where he had previously maintained his office. In an outer or waiting room was a cabinet stocked with packaged remedies or drugs.

The accusation, charging the defendant with violating the injunc-

tion and signed by the county attorney and by the attorney for the Kansas State Board of Medical Registration and Examination, alleged that on June 13 and on October 30, 1941, one W. S. Cordonier, of Wathena, was given medical treatment by the defendant, such treatment consisting of diagnosis and the prescribing of medicine for a fee, and in paragraph 5 it was alleged:

"That the defendant, E. B. Martin, since the month of June, 1941, has been engaged in the practice of medicine at and within the city of Wathena, Doniphan county, Kansas, in willful and contemptuous violation of the order of this court. That the relators are at this time unable to give the court the exact names of the patients or the type of medicinal treatment given by the respondent other than as above detailed, and for that reason have not alleged those further contemptuous acts in more detail."

In his answer, the defendant denied, generally and specifically, the allegation that he had practiced medicine or had in any way violated the injunction, and alleged that such drugs and medicine as were sold to Cordonier were sold under the authority of a state license to dispense such drugs and medicines in unbroken packages.

At the trial the defendant moved to strike paragraph 5 from the accusation of contempt on the principal ground that it "is irrelevant and indefinite and it does not properly apprise the defendant of the nature of any charge preferred against him." The motion was overruled and this is urged as one of the principal specifications of error.

At the trial the state relied upon the alleged medical treatment to Cordonier and upon the testimony of Mrs. Nick Gabriel as to treatments given her by the defendant.

We first consider appellant's contention that Mrs. Gabriel's testimony was inadmissible. He says that in the accusation there was no allegation that medical treatment had been given Mrs. Gabriel and that the only theory upon which her testimony could have been received was that it was covered by the general charge contained in paragraph 5, quoted above, which, he contends, the court erroneously refused to strike. We must here note the situation presented by the record. Apparently no objection was made, at the time, to the admission of Mrs. Gabriel's testimony, nor was there a motion to strike it out. Furthermore, appellant's position is not fortified by any showing as to a motion for a new trial. We have appellant's notice of intention to appeal and to file a motion for a new trial, but we are furnished with no copy of such motion and there is nothing to show, by journal entry or otherwise, what the motion for a new trial, if filed, contained, or whether it was heard

or action was taken upon it. Moreover, the notice of appeal to this court makes no reference to any order overruling a motion for a new trial. The appeal here is only from the judgment and sentence. On such a record and with no showing that any alleged trial errors were called to the trial court's attention Mrs. Gabriel's testimony will not be excluded from our consideration. (*Washburn v. Bank,* 86 Kan. 468, 121 Pac. 515; *Brick v. Fire Insurance Co.,* 117 Kan. 44, 230 Pac. 309; *Rierson v. Southern Kansas Stage Co.,* 146 Kan. 30, 32, 69 P. 2d 1; *State v. Rafferty,* 145 Kan. 795, 798, 67 P. 2d 1111.) Mrs. Gabriel's testimony was the only evidence which could be said to have been received in support of the general allegation of paragraph 5. There is, accordingly, no occasion for examining further the question of whether paragraph 5 should have been stricken out or whether the alleged error in refusing to do so is here for review.

The practice of medicine and surgery—within the meaning of the statutes relating to the examination and registration of doctors of medicine and surgery (G. S. 1935, art. 10, ch. 65)—is defined in section 65-1005. We need not quote the section in full. Among the persons regarded as engaging in such practice is included any one "who shall use the words or letters 'Dr.,' 'Doctor,' 'M. D.' or any other title, in connection with his name, which in any way represents him as engaged in the practice of medicine or surgery, *or any person 'attempting to treat the sick or others afflicted with bodily or mental infirmities."*

The "practice of medicine," within the statutory definition above, is not limited to the prescribing of drugs. The diagnosis of a physical ailment and the prescribing for a fee of a treatment for its relief is the practice of medicine even though the prescribed treatment does not include the use of drugs. (*Slocum v. City of Fredonia,* 134 Kan. 853, 857, 8 P. 2d 332.) In *State v. Johnson,* 84 Kan. 411, 416, 114 Pac. 390, it was said:

"But medicine and surgery, which the appellee is charged with attempting to practice, by common use and adjudged meaning, cover a wide portion of the domain of healing, and may and should be held to cover the case of one who, not claiming to be a physician or surgeon, really practices osteopathy under another guise without possessing the qualifications required of the osteopath."

Our cases are in line with the general rule. The treatment prescribed may be manual manipulation of portions of the body or even the taking of a trip, or sleeping in the open air, etc. (41 Am. Jur. 152, 153; *State v. Smith,* 233 Mo. 242, 260, 135 S. W. 465.)

The remaining question is whether there was any substantial evidence to support the finding of the trial court.

This opinion would be unnecessarily extended by full quotations from the testimony. It would perhaps suffice to say that we have carefully examined the record and find it sufficient to support the judgment. (*State v. Rose*, 124 Kan. 37, 38, 257 Pac. 731; *Newton v. Newton*, 127 Kan. 624, 274 Pac. 247; *Crawford v. Southern Kansas Stage Lines Co.*, 145 Kan. 580, 586, 66 P. 2d 601.) However, we may briefly summarize the testimony offered in support of the accusation. Mrs. Gabriel and the defendant both testified that the defendant examined her back and told her that he thought her trouble resulted from "nerve pressure" or "a nerve pinched," and that he gave her four or five manual treatments or "adjustments." Each time she was treated she left a dollar on the table as she went out. Appellant made no claim to being an osteopath or a chiropractor. The treatments given to Mrs. Gabriel constituted the practice of medicine, under the statute and the authorities above cited.

As to the medicines delivered to Cordonier by appellant, it is true that there was testimony that appellant refused to diagnose Cordonier's ailment and sent him to Doctor Meluney, but there is no evidence that appellant received any oral prescription direct from Doctor Meluney. What was delivered to Cordonier was characterized as "pills" or "powders" or "tablets" or "herbs" or "parsley roots," and it was admitted that they were medicines. Cordonier testified that he took the tablets three times a day because that is the way the appellant "prescribed it"; that appellant didn't tell him what the "powders" or "herbs" were for but told him "they would take care of me." Appellant testified Cordonier paid 25 cents, the first time, for the medicine. Cordonier said he paid $1.25. Appellant testified that he did a retail business of selling packaged medicines, in unbroken packages, under a license from the State Board of Pharmacy, but that the license was issued to his wife.

It is not our function to weigh conflicting evidence or to pass upon the credibility of witnesses (*Bullock v. Kendall*, 80 Kan. 791, 104 Pac. 568; *Gallagher v. Menges & Mange Const. Co.*, 146 Kan. 506, 72 P. 2d 79).

The record prevents our saying that the trial court had no substantial evidence upon which to find that the appellant had practiced medicine in violation of the injunction.

We note, in conclusion, a matter of procedure. Appellant per-

fected his appeal under both the criminal and civil codes and asks us to determine what is the proper procedure to follow on appeal from conviction for indirect contempt. The state raises no question about the matter and concedes that appellant is regularly here. The instant proceeding was properly brought under section 20-1204, which prescribes procedure, in cases of indirect contempt, and review is provided for under section 20-1205. We find no need here to discuss further any procedural question not brought in issue.

It follows from what has been said that the judgment and sentence must be affirmed. It is so ordered.