## JIM BARROW v. STATE.

No. A-3349—Opinion Filed March 29, 1920.

(188 Pac. 351.)

(Syllabus.)

1.  **INDICTMENT AND INFORMATION—Duplicity of Information for Manslaughter.** Information for manslaughter in the second degree, alleged to have committed by the culpable negligence of the defendent, is not duplicitous, although it alleges and charges in one count more than one way in which the defendant was culpably negligent, through gross ignorance, in the treatment of disease resulting in death.

2.  **HOMICIDE—Information—Manslaughter in Second Degree.** For information held sufficient to support a conviction of manslaughter in the second degree by gross ignorance and culpable negligence in the treatment of disease resulting in death, see body of opinion.

3.  **WITNESSES—Cross-Examination—Bias of Defendant's Witness.** It is competent, on cross-examination of a witness for the defendant, to elicit facts which tend to show the bias, prejudice, or friendship of the witness for the defendant.

4.  **APPEAL AND ERROR—Discretion of Trial Court—Scope of Cross-Examination.** A large discretion is lodged in the trial

court as to the scope of cross-examnation of witnesses on matters affecting their credibility, and before a judgment of conviction will be reversed because improper cross-examination along this line was permitted, a clear abuse of discretion must be shown.

5. **HOMICIDE—Death as Result of Ignorance or Negligence of Physician—Criminal Responsibility.** A person assuming to treat disease is bound to know the nature of the remedies he prescribes and the treatment he adopts, and he is responsible criminally for a death resulting to the patient from gross ignorance and culpable negligence in the selection of remedies and the application of the treatment.

6. **APPEAL AND ERROR—Conviction—Sufficiency of Information and Evidence.** Where the information charges an offense, and there is evidence in the record from which the jury was authorized reasonably to conclude that the defendant is guilty of the crime in the manner charged, the judgment will not be set aside because of insufficient evidence.

*Appeal from District Court, Pittsburg County;*
*R. W. Higgins, Judge.*

Jim Barrow was convicted of manslaughter in the second degree, and he appeals. Affirmed.

*Harris & Lackey,* for plaintiff in error.

*S. P. Freeling,* Atty, Gen., for the State.

MATSON, J. This is an appeal from the district court of Pittsburg county, wherein the defendant, Jim Barrow, was convicted of the crime of manslaughter in the second degree, and sentenced to serve a term of two years' imprisonment in the state penitentiary. An appeal in due time was taken from said judgment to this court, and the errors relied upon for reversal will be considered in the order presented by counsel for defendant.

The prosecution is based on section 2325, Revised Laws 1910, defining manslaughter in the second degree, which is as follows:

"Any killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

The information, in substance, charges that the defendant, being grossly incompetent to act as a physician and grossly ignorant of the science of medicine, and not being a licensed physician under the laws of the state of Oklahoma, held himself out as such to the deceased, Tom Lankford, who was then and there sick and suffering from disease and sickness, a further and more fit description of which was to the county attorney unknown, and to the family and relatives of the said deceased, and did willfully, wrongfully, unlawfully, and feloniously, without due caution and circumspection, and by malpractice and in the use of remedies, and by unskillful acts and procurement and culpable negligence, and by exercising gross ignorance and lack of ordinary knowledge and skill in medicine, and through inattention and wanton indifference to the safety of the deceased, and with utter disregard for either the safety or life of the deceased, grossly negelcted to use ordinary precaution in ministering to the sickness and feebleness of the deceased, and wantonly failed and refused to give deceased ordinary remedies to cure and heal him, but, being wholly indiffererent to the health, safety, and life of the deceased, administered to him as a medicine a brew made by burning hog feet that had long theretofore been thrown out as waste and refuse, pretending to the deceased and the members of his family that the said brew and concoction possessed curative qualities and would alleviate and cure the said Tom Lankford; and also by malpractice, through culpable negligence and gross ignorance, the defendant rubbed the

limbs and body of the deceased, accompanied with some incantation, claiming thereby that he was causing the pain to be transferred out of the person of the deceased and to be lodged in him, the said Jim Barrow; and that said brew and said form of rubbing was wholly without nature or cause to tend to cure and heal the deceased and to alleviate his suffering, and was wholly worthless and without remedial value, all of which was known to the defendant; and that said acts as aforesaid, and the culpable negligence, gross ignorance, and wanton inattention and malpractice upon the said Tom Lankford, caused a mortal sickness and feebleness of body from which the said Tom Lankford died, and by reason of all of which the defendant did kill and slay the said Tom Lankford.

The defendant interposed a demurrer to the information, which was overruled and excepted to, and it is here urged that the court erred in overruling the demurrer, upon the grounds that the information is duplicitous and does not state facts sufficient to constitute a crime under the laws of the state.

Counsel present no authorities in support of this contention. We are of the opinion that the information is not duplicitous, although it charges more than one way in which the defendant, through gross ignorance and culpable negligence, attempted to treat and heal the sickness or disease from which the deceased is alleged to have been suffering, and which is alleged to have contributed to and resulted in the death of the deceased. This the pleader was authorized to do in one count under section 5741, Revised Laws 1910. The information is sufficiently definite and certain as to the various means employed which are alleged to have resulted in the death of Tom Lankford, by malprac-

tice, gross ignorance, and culpable negligence on the part of the defendant.

It is the opinion of the court also that the information states an offense, which, if proven to be true, would justify a conviction of manslaughter in the second degree, as defined by section 2325, *supra*. *Com. v. Pierce*, 138 Mass. 165, 52 Am. Rep. 264; *State v. Hardister*, 38 Ark. 605, 42 Am. Rep. 5.

Objection is also made to the manner in which the county attorney was permitted to cross-examine the wife of the deceased, who was introduced and testified in behalf of the defendant. A large discretion is lodged in the trial court as to the scope of the examination of witnesses, especially as to matters of credibility of the witness on cross-examination. The questions complained of relate to the witness' feeling of friendship for the defendant, and under the circumstances of this case, in view of the fact that the witness was largely responsible for calling the defendant to treat her deceased husband, we find no abuse of discretion upon the part of the trial court in overruling the objection of defendant's counsel to the questions asked. *Harold v. Territory*, 18 Okla. 395, 89 Pac. 202, 10 L. R. A. (N. S.) 604, 11 Ann. Cas. 818; *Gilbert v. State.* 8 Okla. Cr. 543, 128 Pac. 1100; 129 Pac. 671.

Objection is made to certain of the court's instructions, but an examination of the instructions convinces us that the law of the case was fully covered in a manner as favorable to the defendant as the evidence warranted. The defendant requested no other instructions on any proposition of law involved in the case.

It is also contended that the evidence adduced in the cause utterly fails and is wholly insufficient to establish that Tom Lankford's death was caused by the culpable negligence of the defendant in the treatment of the disease of which deceased was suffering, and is wholly insufficient upon which to base the conviction.

There is evidence in the record to the effect that at the time the defendant undertook to treat and administer to the deceased the deceased was suffering from an attack of la grippe which was bordering on incipient pneumonia, and the evidence of credible physicians is to the effect that in such cases, even with the most careful and skilled treatment, from 10 to 40 per cent. of the patients die. The evidence also shows that deceased's condition at the time the defendant commenced to administer to him demanded the very best of medical attention and nursing; that defendant was aware of deceased's condition, and at first protested against treating him, but thereafter, being prevailed upon by the relatives of the deceased to treat deceased, the defendant undertook the treatment of the deceased, and administered to him by laying on of the hands and offering a prayer or incantation that the pain be transmitted from the body of the deceased to that of the defendant, and also by administering to the deceased a brew or concoction made by parching and boiling hog hoofs, and also by giving deceased shortly before death a headache or fever powder containing 3½ grains of acetanilide. The undisputed evidence is to the effect that such treatment was without curative powers and not indicated for treatment of the disease from which the deceased was then suffering, but was wholly without nature to tend to alleviate in any degree the disease from which deceased was suffering, and that the headache or fever powder had a

very depressing effect on the heart's action, and that the administration of such treatment under the circumstances was through gross ignorance of the art the defendant assumed to practice.

The main contention urged here appears to be that, in view of the fact that from 10 to 40 per cent. of the patients suffering from the disease the deceased had at the time the defendant commenced treating him probably die despite the very best of medical attention and nursing, it can only be surmised that the treatment administered by the defendant possibly may have contributed to the death of the deceased, and that the evidence of guilt only amounts to a suspicion, and the crime is not proved with that degree of certainty which authorizes a conviction in a criminal cause.

The treatment given the deceased by the defendant was not indicated for the disease from which the deceased was suffering; it in no way tended to alleviate the suffering nor had any curative properties whatever. On the contrary, the treatment administered, considering the time it was given was evidently detrimental to the patient's health. Defendant possessed no knowledge of the curative properties of medicine, was not licensed to practice medicine in the state, and was grossly ignorant of the manner in which the disease from which the deceased was suffering should be treated. The application of hands, accompanied with an incantation or prayer that the pain be transmitted from the body of the deceased to that of the defendant, the administering of hog-hoof tea and of the headache or fever powder at the time it was given, evidenced gross ignorance and culpable negligence on the part of the defendant in the treatment of the disease. Prior to the time the defendant commenced his treatment

of the deceased, the deceased's condition, under the treatment of a skillful physician, had slowly improved. The evidence is to the effect that on the morning the defendant commenced the treatment of the deceased the deceased's temperature was 100, his pulse about 85, and his respiration 24. Prior to that time the temperature of the deceased had been as high as 104, his pulse from 90 to 100, and his respiration above 30. The deceased died within two days after the defendant commenced treating him. No one knows to an absolute certainty whether the deceased would or would not have lived had the treatment of a skillful physician been continued.

The question here is not whether the deceased would have lived had he received treatment according to the care and skill usual among good practitioners of any recognized and authorized school, but did the treatment given and applied by the defendant contribute to and result in the death of the deceased, and was the defendant grossly ignorant of the manner in which such disease should be treated and culpably negligent of the patient in giving the treatment? There is evidence in this record from which the jury was authorized reasonably to conclude that death resulted in the manner charged in the information. Under these circumstances, the trial court having properly submitted the law of the case, this court should not set the judgment aside because of insufficient evidence. *Crilley v. State,* 15 Okla. Cr. 44, 181 Pac. 316; *Cope v. State,* 15 Okla. Cr. 437, 177 Pac. 920.

The crime here did not consist in the omission to perform some duty specifically imposed by law. Defendant owed deceased no duty; but, having assumed to treat him for disease, defendant was bound to know the nature

of the remedies he prescribed and the treatment he adopted, and he is responsible criminally for the death resulting from gross ignorance and culpable negligence in such relation. The burden, of course, rests on the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt that death resulted from defendant's gross ignorance and culpable negligence, but controverted questions of fact are solely for the jury's determination.

As we view the evidence in this case, it cannot, with propriety and due respect for the law, be held that there is an absence of competent evidence on which to base the conviction.

No prejudicial error having been urged as ground for reversal, the judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.