# Staunton

JOSEPH E. BANOVITCH v. COMMONWEALTH OF VIRGINIA.

September 8, 1954.

Record No. 4266.

Present, All the Justices.

The opinion states the case.

*W. E. Neblett* and *Lynwood H. Wilson,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *C. F. Hicks, Assistant Attorney General,* for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

An indictment under the maiming statute, § 18-70 of the Code, was returned against the defendant, Joseph E. Banovitch, charging that in July, 1952, he unlawfully made an assault on Lucy L. Hazlewood and by the use of certain salves and medicines unlawfully caused her bodily injury, with the intent to maim and disfigure her. On his trial to a jury he was found guilty of unlawful wounding "as charged in the within indictment," his punishment fixed at five years in the penitentiary and he was sentenced accordingly. On this appeal he alleges that error was committed in the admission of evidence, in the argument of the Commonwealth's attorney and in holding the evidence to be sufficient to sustain the verdict.

The facts now to be recited are taken from the evidence introduced by the Commonwealth, including statements made by the defendant to officers of the law. The defendant offered no evidence. While the alleged offense occurred in the home of Miss Hazlewood's parents, the only

members of her family who testified were a sister and her husband who lived on adjoining property.

Defendant claimed to be a medical doctor but was not licensed to practice in Virginia. He was born in Germany and was 75 years old at the time he was indicted. He stated to the officers that he attended schools and studied medicine in Germany and graduated from the University of Vienna, Austria, but with what degree does not appear. When Miss Hazlewood first knew him he lived at Crewe, in Nottoway county, Virginia, where he made, advertised and sold, among other things, a medicine for the treatment of cancer under a registered trademark. The cancer remedy consisted of three salves which he called Black Devil No. 1, No. 2 Green and No. 3 Brown. An advertisement or label was introduced showing a picture of defendant, stating the contents of the salves and giving directions for their use. The printed directions were these: "Put Cancer Ointment (No. 1) on a piece of bandage ¼ of an inch thick, size to cover the cancer. Leave it on for 24 hours. Remove and apply Green Salve (No. 2) in the same manner every 24 hours until the cancer starts to run, then apply 3 or 4 times a day until the cancer drops out. Now apply Healing Salve (No. 3) on bandage 3 or 4 times a day. The oftener you dress the sore the quicker it will heal."

Miss Hazlewood was a college and university graduate who had taught school for several years and had been in the mercantile business with her father for about 12 years. She lived with her parents in Kenbridge, Lunenburg county, adjoining Nottoway county, where the defendant lived. She was 50 years old at the time of the offense charged in the indictment. She first met the defendant about Christmas time, 1951, when she and a sister, Mrs. Gee, were taken to see him by their brother-in-law, J. H. Revere. Mrs. Gee, who also bought medicine from defendant, did not testify.

Mrs. Revere, another sister, testified that it was her impression that on that occasion the defendant gave Miss Hazlewood some medicine for arthritis. After that meeting the two sisters, Mrs. Gee and Miss Hazlewood, went quite often to defendant's home. Mrs. Revere went with them occasionally and bought some vitamins.

In February or March, 1952, Miss Hazlewood visited the defendant and told him she had cancer of the womb. He stated to the officers that she also then had cancer of the rectum. He gave her the three types of salves for these troubles. About the last of June or first of July, 1952, Miss Hazlewood went to defendant's home and told him, according to his statement to the officers, that she had cancer of the nose. Her father and possibly one of her sisters came for the defendant and brought him to Kenbridge to treat her for that trouble, which he also diagnosed as cancer. His method of diagnosis, he said, was to apply the Black Devil No. 1 salve and if that caused itching then cancer was present.

This treatment lasted five or six weeks, during which period the defendant lived for the most part in the Hazlewood home and was in Miss Hazlewood's room often, along with members of her family. Some three weeks after the treatments began the defendant and Miss Hazlewood became engaged to be married. He gave her an engagement ring. Mrs. Revere testified that Miss Hazlewood refused the ring when first offered but told her afterwards, in July or August, "If I do not accept the ring, then I will die of cancer. He will not continue to treat me." However, Miss Hazlewood continued to wear the ring for some seven months after the alleged offense, and in March, 1953, the defendant told the officers they expected to get married the following month. Miss Hazlewood died on May 19, 1953, after the indictment but before the trial, from a cause not shown in the record.

Defendant's description of the treatment, as made to the officers, was that he first put the Black Devil No. 1 salve

on Miss Hazlewood's nose and kept it on for eight hours; then he put on the No. 2 Green salve and when the cancer came out he put the No. 3 Brown salve on, and when it healed part of her nose was missing. Her sister said her nose was practically gone. He told the officers that in a case of cancer his salve would cause the diseased part to come off and that part of Miss Hazlewood's nose had come off because it was diseased. The treatments were very painful and evidence of her suffering could be heard next door. The defendant gave her only a mixture of beer and whiskey to ease the pain.

An analysis of the salves used by the defendant on Miss Hazlewood showed that Black Devil No. 1 contained a large amount of zinc chloride, a strong corrosive chemical "that would eat tissue, flesh or even metal." Its common use is as a flux to clean metal prior to soldering. No. 2 Green consisted of animal fat and wax. No. 3 Brown contained carbolic acid, also a corrosive when in pure form. When the No. 1 salve was applied for less than a minute to the arm of the toxicologist who made the analysis it caused a stinging, itching sensation and produced a welt. He testified, however, that he had heard that zinc chloride was sometimes used in the treatment of cancer. The medical testimony was that the diagnosis of cancer by the use of this salve was impossible and the treatment of cancer by the application of these salves was not approved or recognized in the medical profession.

On November 13, 1952, the defendant presented to the Bank of Lunenburg and cashed a check drawn by Miss Hazlewood and payable to him in the sum of $3,384.36, which was all the money she had in her checking account at that time. There was no explanation of this check in the evidence.

On February 9, 1953, the defendant went with Miss Hazlewood to a hospital in Oxford, North Carolina, where defendant stated he was her family physician and she was admitted as his patient. The evidence does not disclose the

purpose of this hospitalization but defendant there stated that he had been treating Miss Hazlewood since July, 1952, and had applied a salve to her face to remove a cancer. He described his method of diagnosing cancer in the same way as he had stated it to the officers. Miss Hazlewood stayed in the hospital until in March, 1953. The defendant stayed with her during that time and visited her at her home several times afterwards.

Microscopic examination of tissue taken from the nose of Miss Hazlewood after her death disclosed no evidence of any malignancy. Miss Hazlewood's sister testified that when the defendant began the treatment on July 2 there were no marks, discoloring, moles or anything of that nature on her nose or face and nothing to indicate there was anything wrong with her.

At the conclusion of the evidence the court instructed the jury without objection that if the defendant applied the salve to Miss Hazlewood with a corrupt and evil intent of maiming or disfiguring her permanently, and not as a cure for some disease he may have thought she had, then he was guilty of unlawful maiming as charged in the indictment. The jury were also told that the Commonwealth must prove beyond a reasonable doubt that the defendant made an assault upon Miss Hazlewood "with the particular intent to maim or permanently disfigure her before he can be found guilty of unlawful wounding as charged in the indictment."

These instructions became the law of the case and they consist with the law of the land. Thus in *Thacker* v. *Commonwealth*, 134 Va. 767, 770, 114 S. E. 504, 505, it is said:

"When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found as a matter of fact before a conviction can be had; and no intent in law or mere legal presumption, differing from the

intent in fact, can be allowed to supply the place of the latter."

Section 18-70 of the Code, the maiming statute, provides that if any person maliciously or unlawfully shoot, stab, cut or wound another, or by any means cause him bodily injury, with the intent to maim, disfigure, disable or kill him, he shall be punished as the statute prescribes. In *Harris* v. *Commonwealth*, 150 Va. 580, 585, 142 S. E. 354, 355, it is said: "The true purpose and meaning of the statute was doubtless conceived to be to define and punish as felonies those acts which had theretofore been considered misdemeanors only in those cases where it also appeared that there was the felonious intent to maim, disfigure, disable, or kill."

Proof of the specific intent is necessary to a conviction under the statute. *Hay* v. *Commonwealth*, 139 Va. 578, 123 S. E. 333. "The test of the offense of maliciously or unlawfully causing bodily injury is the intent with which the result is accomplished rather than the nature of the means, where the means are specified and established." *Dawkins* v. *Commonwealth*, 186 Va. 55, 63, 41 S. E. (2d) 500, 504. The indictment must charge the specific intent, *Williamson* v. *Commonwealth*, 165 Va. 750, 181 S. E. 351, and the verdict must find its existence either in terms or by necessary implication, *Lane* v. *Commonwealth*, 190 Va. 58, 55 S. E. (2d) 450.

The specific intent may, like any other fact, be shown by circumstances. Intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it. *Kuenzli* v. *State*, 208 Wis. 340, 242 N. W. 147; *Merritt* v. *Commonwealth*, 164 Va. 653, 662, 180 S. E. 395, 399. Thus when a person without any provocation strikes another with a deadly weapon or throws a corrosive acid in his face and thereby maims or disfigures him, he is presumed to have intended to maim or disfigure because that was the natural and probable consequence of his act. *Lee* v. *Commonwealth*, 135 Va. 572,

115 S. E. 671; *Lee* v. *State*, 66 Tex. Cr. Rep. 567, 148 S. W. 567; *People* v. *Winnick*, 326 Ill. 405, 158 N. E. 162.

However, an intent to maim or disfigure cannot be presumed from an act which does not naturally bespeak such intent. "The color of the act determines the complexion of the intent only in those situations where common experience has found a reliable correlation between a particular act and a corresponding intent." *Hubbard* v. *United States*, (9th Cir.), 79 F. (2d) 850, 853; 22 C. J. S., Criminal Law, § 32, pp. 91-2, note 4.

In *Merritt* v. *Commonwealth*, *supra*, the indictment charged the accused with maliciously pointing a loaded gun at Trull, who was in shooting range. It was held that the indictment charged an assault only, and "In order to raise this assault to a more substantive crime, it must be done with a specific intent to take life. This intent cannot be inferred from the act alleged." 164 Va. at pp. 662-63, 180 S. E. at p. 399.

The Commonwealth states in its brief that it has found no prior case in which a person purporting to practice medicine has been convicted of mayhem for the improper treatment of disease, but cites cases of convictions of manslaughter where death resulted from such treatment, whether the person giving the treatment was a licensed doctor or merely assumed to act as such. *Hampton* v. *State*, 50 Fla. 55, 39 So. 421; *Commonwealth* v. *Pierce*, 138 Mass. 165, 52 Am. Rep. 264; *Barrow* v. *State*, 17 Okla. Crim. Rep. 340, 188 P. 351, 9 A. L. R. 207 and Annotation at p. 211. It then cites the statement in *Harris* v. *Commonwealth*, 134 Va. 688, 693, 114 S. E. 597, 599, that if the accused in that case would have been guilty of manslaughter if he had killed Quick, then he was guilty of unlawful wounding in shooting him. But that case was referring to voluntary manslaughter, an intentional killing, and not to involuntary manslaughter, an accidental killing, of which intent is not an element. *Bell* v. *Commonwealth*, 170 Va. 597, 195 S. E. 675; *Kirk* v. *Commonwealth*, 186 Va. 839, 44 S. E. (2d) 409.

■ It is argued for the Commonwealth that the motive of the defendant for committing the crime charged against him was to obtain money from his victim. To concede that the evidence establishes such a motive is not to say that it also proves intent. Motive is the moving cause which induces action, while intent is the purpose to use a particular means to effect a definite result. 46 C. J. S., Intent, p. 1104, note 86. The evidence does show that the defendant obtained money from Miss Hazlewood, but it does not show why it was given. At that time they were engaged to be married and he had bought property in the county in which she lived. If any inference can be drawn from this transaction it would be more logical to suppose that the money was to help pay for the property. It would be rank speculation to conclude that it proves a plan or purpose on defendant's part to maim or disfigure Miss Hazlewood.

The treatments had been over for four months when the defendant received the check. He and Miss Hazlewood were then engaged to be married and for all the evidence shows that engagement continued until it was ended by her death. Seven months after the treatments were concluded he went with her to a hospital in North Carolina and stayed with her during the two weeks or more that she was there. While she was in the hospital she gave the engagement ring to her mother but it is not shown that it was ever given back to the defendant. It is shown that after she returned from the hospital he visited her in her home and their relations to each other apparently did not change up to the time of her death.

The evidence in this case does not furnish proof beyond a reasonable doubt that the defendant applied the salves to the person of Miss Hazlewood with the specific intent to maim or disfigure her, nor does it present facts from which such intent may properly be presumed. For the absence of that proof the judgment of conviction of unlawful wounding must be reversed.

■ The indictment, however, also charged the defendant with the offense of assault and battery, both in terms and as an essential element of the crime of mayhem. The jury were instructed on that offense, which is a misdemeanor and is defined in *Jones* v. *Commonwealth*, 184 Va. 679, 36 S. E. (2d) 571, but they did not deal with that charge.

As stated in *Commonwealth* v. *Stratton*, 114 Mass. 303, 19 Am. Rep. 350, "Although force and violence are included in all definitions of assault, or assault and battery, yet, where there is physical injury to another person, it is sufficient that the cause is set in motion by the defendant, or that the person is subjected to its operation by means of any act or control which the defendant exerts." 19 Am. Rep. at p. 351. "The law upon the subject is intended primarily to protect the sacredness of the person, and, secondarily, to prevent breaches of the peace." *Lynch* v. *Commonwealth*, 131 Va. 762, 765, 109 S. E. 427, 428.

In *Davis* v. *Commonwealth*, 150 Va. 611, 143 S. E. 641, there was evidence that the defendant, while intoxicated and driving his automobile at high speed on the wrong side of the road, collided with another automobile and injured the passengers in it. It was held that if the act was done with reckless and wanton disregard for the lives and safety of others, the law would impute to the defendant an intent to do bodily harm and he would be guilty of assault and battery. See also 5 Am. Jur., Automobiles, §§ 763-64, pp. 914-15; Annotation, 99 A. L. R. at p. 835.

Generally speaking, consent of the person assaulted is a good defense except where the consent is obtained by fraud or where the peace and dignity of the State are involved. 6 C. J. S., Assault and Battery, § 90, p. 941. But consent is no excuse for recklessness. *State* v. *Gile*, 8 Wash. 12, 35 P. 417.

In *Commonwealth* v. *Pierce, supra*, 138 Mass. 165, 52 Am. Rep. 264, a conviction of manslaughter was sustained on evidence that the defendant "publicly practiced as a physician, and being called to attend a sick woman, caused her,

with her consent, to be kept in flannels saturated with kerosene for three days, more or less, by reason of which she died." The opinion was by Holmes, J., afterwards Justice of the Supreme Court, who wrote: "When the defendant applied kerosene to the person of the deceased in a way which the jury have found to have been reckless, or in other words, seriously and unreasonably endangering life according to common experience, he did an act which his patient could not justify by her consent, and which therefore was an assault notwithstanding that consent. * * *."

It is generally held, as noted, that if a physician, or a person assuming to act as such, through criminal negligence in the treatment of a patient causes his death he is guilty of manslaughter. If the criminal negligence results only in bodily injury to the patient, instead of death, it follows, we think, that the offense of assault and battery is committed, for the same reason as it was decided in *Davis* v. *Commonwealth, supra*, that the defendant there was guilty of assault and battery if he injured another while driving his automobile in a criminally negligent manner.

In *Richardson* v. *Commonwealth*, 192 Va. 55, 57, 63 S. E. (2d) 731, 732, it was said that in order to support a conviction of criminal negligence the Commonwealth "must prove beyond a reasonable doubt that the act, or series of acts, charged are of such reckless, wanton or flagrant nature as to show utter disregard of the safety of others under circumstances likely to cause injury. * * *."

We are, therefore, of opinion to remand this case to permit retrial, limited to the charge of assault and battery.

On such retrial the argument of the Commonwealth's attorney should omit any reference to the failure of the defendant to testify, if that occurs. The requirement of the statute, § 19-238, that such failure shall not be the subject of any comment before the court or the jury, must be strictly observed, otherwise a reversal may result. *Joyner* v. *Commonwealth*, 192 Va. 471, 65 S. E. (2d) 555. Nor should inflammatory argument be made by the Common-

wealth's attorney. Convictions for crime should rest upon reason and the Commonwealth does not desire that its officers resort to passion or prejudice to gain that end. 2 Mich. Jur., Argument and Conduct of Counsel, § 17, p. 76.

There was no error in the admission of the testimony on this trial as complained of in defendant's assignments of error Nos. 1, 2 and 3. While the photographs of Miss Hazlewood introduced in evidence were taken after her death, those things about her appearance which were attributed to the treatment by the defendant were sufficiently explained. The statements alleged to have been made by Miss Hazlewood prior to her death and to which exceptions were taken were admissible as indicating her state of mind and the relations existing between her and the defendant. *Karnes* v. *Commonwealth*, 125 Va. 758, 99 S. E. 562. The testimony of the officer of the bank as to cashing the check given by Miss Hazlewood to the defendant was relevant to the Commonwealth's theory of motive and was not secondary evidence.

For the reasons stated the judgment below is reversed and the case is remanded for a new trial on the charge of assault and battery, if the Commonwealth be so advised.

*Reversed and remanded.*