COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


CLARENCE R. McCRAY
                                      MEMORANDUM OPINION[*] BY
v.        Record No. 1961-97-1        JUDGE RICHARD S. BRAY
                                           JULY 7, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                    Christopher W. Hutton, Judge

            Brian D. Lytle for appellant.

            John H. McLees, Jr., Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


    Clarence R. McCray (defendant) was convicted for seven

felonies and two misdemeanors arising from seven separate

incidents of "purse-snatching."  On appeal, defendant challenges

the trial court's failure to suppress his confession to police

and the sufficiency of the evidence to support several of the

convictions.  Finding no error, we affirm the trial court.

    The parties are conversant with the record, and this

memorandum opinion recites only those facts necessary to

disposition of the appeal.

                        I.  The Confession

    On October 18, 1996, defendant voluntarily accompanied

Hampton police to the offices of detectives investigating the

subject offenses.  Although not then under arrest, defendant was

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

advised of his Miranda rights and willingly submitted to three hours of intermittent questioning relative to a rash of local "purse-snatchings." Unaware that a victim had already identified him as the perpetrator of one offense, defendant repeatedly denied involvement in the crimes. However, when Detective Jimmy L. Forbes escorted defendant to a nearby magistrate's office to secure a warrant charging robbery, he requested to talk with Forbes "right now" and confessed to the instant crimes. He further agreed to an additional interview and, on October 20th, affirmed to Forbes his earlier statements, with added details of the offenses.

Defendant later moved the trial court to suppress his confessions, arguing that they had not been "freely and voluntarily given." At the related hearing, Forbes acknowledged that defendant's health was "poor" on October 18th, but noted that he "displayed no difficulty" "comprehend[ing] simple questions" and "did not appear to be under the influence of any substance." However, Detective Nisley, also involved in the questioning, recalled that defendant was a "physical wreck" and suspected he was "on . . . cocaine." Defendant testified that he had smoked "crack" and consumed gin prior to the interrogation, and confessed in hope of release and upon Forbes' promise of "some help."

In denying the motion, the trial court determined, from "the totality of the evidence," that defendant, "acting of his own

free will with knowledge and intelligence," decided "to tell Detective Forbes . . . about [his involvement in] the crimes." The court specifically noted that Forbes "spent much greater time" with defendant than Nisley.

"Although the issue of voluntariness is a question of law subject to the court's independent review of the entire record, 'the trial court's subsidiary factual findings, upon which voluntariness is determined, . . . will not be disturbed on appeal unless plainly wrong.'" Green v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (1998) (citations omitted). "[T]he burden is upon the defendant to show the trial judge's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, constituted reversible error." Id. at ___, ___ S.E.2d at ___ (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1989)).

"The test for voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'" Jenkins v. Commonwealth, 244 Va. 445, 453-54, 423 S.E.2d 360, 366 (1992) (citations omitted). "'In determining whether the defendant's will has been overborne, courts look to the totality of all the surrounding circumstances,' including the defendant's background, experience, mental and physical condition and the conduct of the police." Commonwealth v. Peterson, 15 Va. App. 486, 488, 424

S.E.2d 722, 723 (1992) (citations omitted).

We recognize that "[t]he amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced by intoxication, drugs, or pain, but some level of coercive police activity must occur before a statement or confession can be said to be involuntary." Id. (statement ruled involuntary when defendant on cocaine, "'having problems' breathing, having chest pains, and connected to a heart monitor in an ambulance en route to the hospital"). However, "mere emotionalism, confusion, or depression do not dictate a finding" that a confession was involuntarily given. See Harrison v. Commonwealth, 244 Va. 576, 583, 423 S.E.2d 160, 164 (1992) (citation omitted).

The instant record discloses that defendant consistently denied involvement in the crimes during the several hours of initial questioning, later confessing in a further interview undertaken at his request and affirmed by him several days thereafter. The trial court determined from the related evidence that defendant was "responsive . . . alert, [and reasonably] articulate," throughout and "made the intellectual decision of his own freewill that he wanted to [confess]." This finding is supported by the record and will not be disturbed on appeal.

## II. The Assault & Battery Conviction

Victim Vernita K. Aiken testified that, on October 17, 1996, she returned to her parked car and discovered her "purse . . .

tipped over" and wallet missing.  She immediately noticed
defendant "at the end of [her] car," about to leave the area by
bicycle.  Aiken "yelled" to defendant, grabbed both him and the
bike, and a struggle ensued, ending when Aiken fell to the ground
and defendant fled on foot with the wallet.  Aiken suffered
"scratches" and "scrapes," which resulted in scarring to her
legs.  Defendant was convicted of petit larceny and assault and
battery, complaining on appeal that the evidence does not support
the latter conviction.

"Assault and battery, . . . requires proof of 'an overt act
or an attempt . . . with force and violence, to do physical
injury to the person of another,' 'whether from malice or from
wantonness,' together with 'the actual infliction of corporal
hurt on another . . . willfully or in anger.'"  Boone v.
Commonwealth, 14 Va. App. 130, 132-33, 415 S.E.2d 250, 251 (1992)
(citations omitted).  "[T]he slightest touching of another . . .
if done in a rude, insolent or angry manner, constitutes a
battery for which the law affords redress."  Crosswhite v.
Barnes, 139 Va. 471, 477, 124 S.E. 242, 244 (1924) (citation
omitted).  "'[W]here there is physical injury to another person,
it is sufficient that the cause is set in motion by the
defendant, or that the [victim] is subjected to its operation by
means of any act or control which the defendant exerts.'  'The
law upon the subject is intended primarily to protect the
sacredness of the person, and, secondarily, to prevent breaches

of the peace." Banovitch v. Commonwealth, 196 Va. 210, 219, 83 S.E.2d 369, 374 (1954) (citations omitted).

Here, the trial court concluded from the evidence that Aiken's injuries resulted from defendant's deliberate acts directed toward her, attended by the requisite "touching" and wrongful purpose, a finding supported by the record.

### III. The Robbery Convictions

Victim Lisa Gray testified that, on October 7, 1996, defendant "ran into [her] like a football player," "grabbed [her] purse," and "dragg[ed her] through the dirt." Gray required medical treatment, including physical therapy. The court convicted defendant of robbery.

Victim Doris Cavedo testified that, on October 14, 1996, defendant "rode beside [her] on a bicycle and grabbed [her] purse off [her] arm," "pull[ing] [her] down" and along the "ground" for ten feet. During the offense, defendant "turned and looked" at Cavedo but continued dragging her until he secured possession of the purse. Cavedo was treated for "cracked ribs," a leg injury and various scratches and bruises, care which required hospitalization for eight days, followed by two weeks in a convalescent center. The court found defendant guilty of unlawful wounding and robbery.

In challenging both the Gray and Cavedo robbery convictions, defendant argues that the evidence establishes only that "contact and injur[ies were] . . . incidental to the grabbing of the

purse[s]" and, therefore, proves only two larcenies from the person.

"'Robbery, a common law offense in Virginia, is defined as the "taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, <u>by violence or intimidation</u>."'" <u>Jones v. Commonwealth</u>, 26 Va. App. 736, 738, 496 S.E.2d 668, 669 (1998) (citation omitted).

> "The touching or violation necessary to prove [robbery] may be indirect, but cannot result merely from the force associated with the taking." Instead, "[v]iolence or force requires a physical touching or violation <u>of the victim's person</u>." . . . "'[T]he offense of robbery . . . is not related to the force used on the object taken but to the force or intimidation <u>directed at the person of the victim</u>.'"

<u>Id.</u> at 739, 496 S.E.2d at 670 (quoting <u>Winn v. Commonwealth</u>, 21 Va. App. 179, 181-82, 462 S.E.2d 911, 912-13 (1995)). Thus, "additional circumstances" are necessary "to transform the taking from a larceny to a robbery," including a "struggle, where the victim is knocked down, or . . . put in fear -- in other words, where the defendant employs violence or intimidation against the victim's person." <u>Winn</u>, 21 Va. App. at 182, 462 S.E.2d at 913 (citation omitted).

Here, the evidence clearly supports the finding that defendant directed the requisite deliberate violence and intimidation against both Gray and Cavedo, physically injuring and intimidating each as he consummated the requisite "taking."

<u>IV.  The Unlawful Wounding Conviction</u>

- 7 -

Lastly, defendant complains that evidence of the attack upon Doris Cavedo fails to support the conviction for unlawful wounding.  "An element necessary to both malicious and unlawful wounding is the 'intent to maim, disfigure, disable, or kill' the victim."  Boone v. Commonwealth, 14 Va. App. 130, 132, 415 S.E.2d 250, 251 (1992); Code § 18.2-51.  "'[A]n intent to maim, disfigure or kill may be presumed' when an attack is 'attended with . . . violence and brutality.'"  Id. at 133, 415 S.E.2d at 252 (citations omitted).  The nature and circumstances of defendant's aggravated attack on Cavedo clearly gives rise to the presumption that he possessed the requisite intent to maim, disfigure, disable or kill her, and provides ample support for the conviction.

Accordingly, we affirm the disputed convictions.

Affirmed.