COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


ANDREW GORDON LUCK

                                            OPINION BY
v.    Record No. 1528-99-2      JUDGE RUDOLPH BUMGARDNER, III
                                            JULY 18, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                     John F. Daffron, Jr., Judge

            Steven D. Benjamin (Betty Layne DesPortes;
            Benjamin & DesPortes, P.C., on briefs), for
            appellant.

            Linwood T. Wells, Jr., Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     The trial court convicted Andrew Gordon Luck of two counts

of malicious bodily injury of a police officer, Code

§ 18.2-51.1. He contends the trial court erred (1) in finding

the evidence sufficient to convict, and (2) in considering at

sentencing a letter written to the trial court. Finding no

error, we affirm.

     When a defendant challenges the sufficiency of the

evidence, we examine the evidence that tends to support the

conviction and allow it to stand unless it is plainly wrong or

unsupported by the evidence. We view the evidence and all

reasonable inferences in the light most favorable to the

Commonwealth.  See Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).

Officer Gregory A. Johnson observed the defendant weaving his pickup truck through traffic on Jefferson Davis Highway during the early morning hours of October 29, 1995 while throwing items out of it.  Officer Johnson activated his flashing lights, but the defendant refused to pull over and accelerated to 80 miles per hour.  That began a chase through Chesterfield County into Colonial Heights that lasted for sixteen miles, involved four to five police vehicles, and only ended when the defendant wrecked after ramming into the side of a pursuing police vehicle.  The defendant drove at 85-90 miles per hour in the southbound lanes weaving between them like a race driver, and crossing into the oncoming, northbound lanes to pass cars.  The defendant never stopped for red traffic lights even when entering a 25 miles per hour zone.  Whenever the police pulled alongside, he would turn into the police vehicle forcing it to back off to avoid collision.

Eventually State Trooper Thomas, with Trooper Garrett riding with him, attempted to establish a rolling roadblock to slow the defendant down.  Each time the troopers tried to pass, the defendant steered into their lane and forced them into oncoming traffic.  Finally, Trooper Thomas got in front of the defendant by ducking to the inside and accelerating to 130 miles per hour.  He began the rolling roadblock by slowing to the

defendant's speed of 80 miles per hour.  At that point, the defendant accelerated, rammed the police vehicle, and maneuvered back in front.

The troopers again tried to pass, but when they came alongside, the defendant steered into their car with sufficient force to shatter the windshield and lock the vehicles together. The two cars crossed nearly all four lanes before Trooper Thomas "hit the brakes and locked it down, and the vehicles separated . . . ."  Even as the defendant lost control of his car and started to roll over, he was still trying to push the police car off the road.  The troopers went off the road to the left, but Trooper Thomas was able to bring his vehicle to a controlled stop.  The defendant kept going until he crashed.

Both troopers were treated in the hospital for injuries received in the collisions.  Trooper Thomas was out of work for a day or two, continued to be stiff for four to five days, and took prescribed medication for lower back pain.  He suffered a low back strain from being hit several times by the defendant's vehicle.  Trooper Garrett had similar injuries and suffered from "mild back discomfort on flexion and extension" with "tenderness to palpation in the lumbar musculature."

To sustain the convictions of malicious wounding of the two state troopers, the Commonwealth had to prove the defendant maliciously caused "bodily injury to another person . . . with intent to maim, disfigure, disable or kill, and knowing or

having reason to know that such other person is a law enforcement officer . . . engaged in the performance of his public duties."  Code § 18.2-51.1.  The defendant contends the injuries were not sufficient to constitute bodily injury because the troopers suffered no broken bones or bruises.  He argues that the injuries must be observable or determinable by objective means.  The defendant also contends the evidence failed to establish he had an intent to "maim, disfigure, disable or kill" the troopers and failed to prove he acted maliciously.

"'Bodily injury comprehends, it would seem, any bodily hurt whatsoever.'"  Bryant v. Commonwealth, 189 Va. 310, 316, 53 S.E.2d 54, 57 (1949) (citation omitted).  See Campbell v. Commonwealth, 12 Va. App. 476, 483, 405 S.E.2d 1, 4 (1991) (en banc) (breaking of the skin not required).  While the statute does not define bodily injury, courts have been reluctant to give juries a definition because the phrase has an "everyday, ordinary meaning."  Stein v. Commonwealth, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991).  The evidence permits the finding that the two troopers suffered bodily injury when they received soft-tissue injuries that required medical treatment and caused pain and stiffness.  If those injuries did not meet the requirements for bodily injury, we would have the anomaly of an "everyday, ordinary" phrase having different meanings in criminal law and tort law.

"[I]ntent is the purpose to use a particular means to effect a definite result."  Banovitch v. Commonwealth, 196 Va. 210, 218, 83 S.E.2d 369, 374 (1954).  "The nature and extent of the bodily injury and the means by which [it is] accomplished may reflect this intent but are not exclusive factors." Campbell, 12 Va. App. at 483, 405 S.E.2d at 4.  The requisite intent may be proven from circumstances, which include the defendant's conduct.  See id. at 484, 405 S.E.2d at 4; Banovitch, 196 Va. at 216, 83 S.E.2d at 373.  "The fact finder is entitled to draw inferences from those facts proven to be true, so long as the inferences are reasonable and justified." Cottee v. Commonwealth, 31 Va. App. 546, 555, 525 S.E.2d 25, 30 (2000) (citation omitted).  "'[T]he finder of fact may [also] infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts.'"  Id. (citations omitted). See Campbell, 12 Va. App. at 484, 405 S.E.2d at 4.

Marked police vehicles, with lights flashing and sirens sounding, chased the defendant for sixteen miles at 80 miles per hour.  The defendant weaved in and out of traffic, never stopped for red traffic lights, and passed cars while crossing into the oncoming lane of travel.  At dangerous speeds, he repeatedly steered into the police vehicles even forcing one into the opposite lane of travel.  When the troopers attempted a rolling roadblock, the defendant accelerated and struck them from behind.  The defendant rammed the police vehicle to avoid being

passed, locked the vehicles together, and forced the troopers off the road.

The fact finder could draw the reasonable and justified inference that the defendant intended to maim, disfigure, disable or kill when he repeatedly rammed the police vehicle while traveling at 80 miles per hour. Indeed, such a finding is consistent with the defendant's claim that he was merely trying to elude the police because he was driving a stolen vehicle in violation of probation. His assertion provides the motive and explanation for his intentional acts, which could obviously cause a serious wreck, maiming, disfiguring, disabling, or killing anyone involved in it. See Moody v. Commonwealth, 28 Va. App. 702, 707, 508 S.E.2d 354, 356 (1998) (even though defendant warned victim, it was reasonable to infer he "formed specific intent to run over" him because he did not decelerate, brake, or swerve to avoid hitting him).

From those same acts a fact finder could reasonably and justifiably infer that the defendant acted maliciously and that his acts were purposeful, done deliberately, and while under the control of reason. "'Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 475 (1989) (citation omitted). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful

and cruel act without any or without great provocation." Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992) (citation omitted). Volitional acts, purposefully or willfully committed, are consistent with a finding of malice and inconsistent with inadvertence. See Porter v. Commonwealth, 17 Va. App. 58, 61, 435 S.E.2d 148, 149 (1993). The presence of malice is a question of fact to be determined by the fact finder. See Long, 8 Va. App. at 198, 379 S.E.2d at 476.

The manner in which the defendant drove turned his truck into a weapon. "A motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife." Essex v. Commonwealth, 228 Va. 273, 281, 322 S.E.2d 216, 220 (1984). Cf. Paytes v. Davis, 156 Va. 229, 234, 157 S.E. 557, 558 (1931) ("A high-powered car moving rapidly is quite as deadly as a locomotive."). Compare Moody, 28 Va. App. at 708, 508 S.E.2d at 357 (attempted malicious wounding conviction upheld where reasonable to infer defendant intended to run down victim), and Haywood v. Commonwealth, 20 Va. App. 562, 567-68, 458 S.E.2d 606, 609 (1995) (from the evidence could not exclude reasonable hypothesis that driver intended to elude police, not to kill them by running roadblocks). Malice may be inferred from the deliberate use of a deadly weapon. See Morris v. Commonwealth, 17 Va. App. 575, 578, 439 S.E.2d 867, 870 (1994).

Lastly, we consider whether the trial court erred in considering a letter from the defendant's aunt written to the

court.  At sentencing, the trial judge noted that he did not ordinarily read such letters, but he read this one and considered "what was written there."  The letter discussed the family's "anguish . . . in a very, very poignant manner."  The trial court made the letter part of the file and the record, continued to discuss the case, and then imposed sentence.  The defendant did not object to the trial court's consideration of the letter.  Defense counsel, who was unaware of the letter until the court mentioned it, did not request an opportunity to review the letter or make any response to its contents.  The defendant argues that Code § 8.01-384(A)[1] excuses his failure to object because the trial court had already considered the letter before he had an opportunity to object.  We conclude the defendant had the opportunity to object but elected not to do so.  Accordingly, Rule 5A:18 bars consideration of this question.  See <u>Ohree v. Commonwealth</u>, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

For the foregoing reasons, we affirm the convictions.

<u>Affirmed.</u>

---

[1] Code § 8.01.384(A) provides, in part, that "if a party has no opportunity to object to a ruling or order at the time that it is made, the absence of an objection shall not thereafter prejudice him on a motion for a new trial or on appeal."

Benton, J., dissenting.

I agree that the evidence was sufficient to prove beyond a reasonable doubt that the officers suffered bodily injuries and that Andrew Gordon Luck, a seventeen-year-old juvenile, acted maliciously in committing the acts that caused those injuries. I do not agree that the evidence proved Luck had the specific intent to maim, disfigure, disable, or kill. Indeed, the trial judge found the evidence did not prove Luck had an intent to kill but, rather, proved Luck had an intent to injure.

"The necessary intent . . . is the intent in fact, as distinguished from an intent in law." Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974). "Intent in fact is the purpose formed in a person's mind, which may be shown by the circumstances surrounding the offense, including the person's conduct and his statements." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). The evidence proved Luck was trying to elude and escape from the officers as they attempted to use their cars to stop his truck. Immediately prior to the first collision, Luck was travelling southbound on a four lane highway at approximately eighty miles per hour. An officer first attempted to pass Luck on the left and "backed off" when Luck veered his truck into the travel lane in which the police car was travelling. The officer then tried to pass Luck on the right and, when he had almost completely passed Luck's truck, the officer applied the brakes in an attempt to

slow Luck's truck.  One officer said the vehicles were then travelling about sixty-five miles per hour because the traffic had increased.  At that point, Luck accelerated, hit the left rear of the officer's car, and moved ahead of that officer's car.  The officer then attempted once again to pass Luck on the left.  As he did so, Luck's truck abruptly hit the right side of the officer's vehicle, forcing both vehicles into the northbound lanes.  The officer's front bumper and Luck's rear bumper interlocked, causing the officer to lose control of his car.  Luck's truck continued to the left pushing the officer's car off the road until Trooper Thomas "really hit the brakes."  The vehicles then disconnected.  Luck lost control of his truck and rolled repeatedly until he came to rest off the roadway in front of a restaurant.  The officer's vehicle slowed and stopped on the highway.

That injuries resulted is not dispositive proof of Luck's intent in fact.  "Rather, the question is whether [Luck], while driving his truck, formed the specific intent to use his vehicle as a weapon for the unequivocal purpose of [maiming, disfiguring, or disabling,] the police officers."  Haywood v. Commonwealth, 20 Va. App. 562, 566, 458 S.E.2d 606, 608 (1995).  No evidence proved that Luck had any intent other than to get away.  Even assuming, however, as the trial judge found, the evidence proved an intent to commit bodily injury, that proof was not sufficient to prove an intent to maim, disfigure, or

disable, to the exclusion of a malicious intent to do bodily harm.  See Boone v. Commonwealth, 14 Va. App. 130, 132, 415 S.E.2d 250, 251 (1992) (an intent "to do physical injury to the person of another, 'whether from malice or from wantonness'" is consistent with the elements of assault and battery).

For these reasons, I would reverse the convictions for malicious bodily injuries to law enforcement officers with the intent to maim, disfigure or disable.