COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Ortiz and Lorish
Argued at Richmond, Virginia


MAURICE WENDELL THROWER, SR.

MEMORANDUM OPINION* BY
v.      Record No. 1737-22-2           JUDGE RICHARD Y. ATLEE, JR.
                                        JANUARY 30, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Appellant Maurice W. Thrower, Sr. appeals his convictions for attempted malicious

wounding in violation of Code §§ 18.2-26, -51, and attempted robbery in violation of Code

§§ 18.2-26, -58(B)(3). Thrower challenges the sufficiency of the evidence for both convictions,

arguing that the evidence was insufficient to establish both the specific intent to maim, disfigure,

disable, or kill the victim and the intent to steal. For the following reasons, we disagree and affirm.

I. BACKGROUND

On October 6, 2021, Thrower was panhandling outside a Chipotle restaurant. He was

holding a sign reading "homeless, please help. We all need help in this time of need. Anything will

help. God Bless you, thank you my friend." Jefferson Guzman encountered Thrower when

Guzman arrived at the restaurant to purchase a meal. Thrower asked Guzman for money. Guzman

declined and entered the restaurant. Finding the line too long, Guzman exited the restaurant without

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

buying anything. As he exited, he had two twenty-dollar bills in his hand. Thrower repeated his request for money, which Guzman again declined. Thrower followed Guzman, shouting, and he accused Guzman of spitting on him. When Guzman turned around, he saw Thrower moving towards him and drawing a sheathed knife from a backpack. Once within striking distance, Thrower tried to stab Guzman in the stomach with the unsheathed knife; Guzman avoided injury only by leaping back away from Thrower's thrust. At trial, Guzman testified that he "felt that [his] life was gonna end that day." After leaping back, Guzman ran backwards, further away from Thrower, and he took out his phone to call the police. When Thrower saw that, he fled.

Michael Dehoff, a land surveyor working in an adjacent parking lot, witnessed the incident. Dehoff heard Thrower shouting expletives at Guzman and saw Thrower retrieve the knife from his backpack and lunge toward Guzman, wielding it from within three feet.

Chesterfield Police Officer Craig Robertson went to the scene in response to Guzman's 911 call and spoke with Guzman. He then proceeded to a nearby Kroger store where Officer Hung Do had located Thrower. When Officer Do approached, Thrower put down his backpack, lifted his shirt, and raised his hands. Officer Do then recovered a knife with a six- or seven-inch blade and the panhandling sign from Thrower, which Officer Robertson took as evidence.

Following a bench trial, the trial court convicted Thrower of both attempted malicious wounding and attempted robbery. It sentenced him to a total of 15 years, with 8 years and 6 months suspended. Thrower now appeals his convictions.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Turner v. Commonwealth*, 75 Va. App. 491, 503 (2022) (alteration in original)

- 2 -

(quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Turner*, 75 Va. App. at 503 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. *The trial court did not err in convicting Thrower of attempted malicious wounding.*

Thrower challenges his conviction for attempted malicious wounding. The malicious wounding statute provides that it is a crime to "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill." Code § 18.2-51. "An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission." *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995)). Thrower contends that the evidence was insufficient to prove that he intended to maim, disfigure, disable, or kill Guzman. We disagree.

"Determining intent is 'generally a question for the trier of fact.'" *Id.* (quoting *Haywood*, 20 Va. App. at 566). "The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged." *Id.* (quoting *Wynn v. Commonwealth*, 5 Va. App. 283, 292 (1987)). This Court has held that "[t]o be guilty [of attempted malicious wounding], a person must intend to permanently, not merely temporarily, harm

- 3 -

another person." *Johnson v. Commonwealth*, 53 Va. App. 79, 101 (2008). Thrower contends that the Commonwealth failed to prove that he intended to "maim or kill, as opposed to merely frighten, Guzman."

Citing *Banovitch v. Commonwealth*, 196 Va. 210, 217 (1954), Thrower contends that "an intent to maim or disfigure cannot be presumed from an act which does not naturally bespeak such intent." But *Banovitch* involved an unlicensed physician treating a woman's cancer with ineffectual topical salves of his own invention. *Id.* at 212-13. The Supreme Court was unpersuaded that applying topical salves could "naturally bespeak" an intent to maim. *Id.* at 217-18. But the Court also noted that "when a person without any provocation strikes another with a deadly weapon . . . and thereby maims or disfigures him, he is presumed to have intended to maim or disfigure because that was the natural and probable consequence of his act." *Id.* at 216; *cf. Fletcher*, 72 Va. App. at 506 ("[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." (alteration in original) (quoting *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998))).

A "deadly weapon" is one "likely to produce death or great bodily injury from the manner in which it is used[.]" *Fletcher*, 72 Va. App. at 507 (alteration in original) (quoting *Pannill v. Commonwealth*, 185 Va. 244, 254 (1946)). Here, Thrower used a knife that had a six- or seven-inch blade. He thrust that knife at Guzman's stomach in such a manner that it caused Guzman to believe his life was going to end. Thrower did not injure Guzman only because Guzman jumped out of the way. The natural and probable consequence of thrusting a knife of that size into the stomach of a person is severe injury or even death. Thus, a factfinder was permitted to infer that Thrower intended the natural and probable consequences of his act.

Thrower argues that if he genuinely intended to maim or kill Guzman, "one would expect to see repeated and wildly aggressive attacks from him." He points out that he "made only a single

gesture with the knife towards Guzman." But this argument ignores the fact that Guzman pulled out his phone to call the police. Abandoning the attack when Guzman called the police is not inconsistent with an intent to maim or kill Guzman. *See Jones v. Commonwealth*, 70 Va. App. 307, 327 (2019) ("[L]ighting a match with intent to set fire to a haystack has been held to amount to a criminal attempt to burn it, although the defendant blew out the match on seeing that he was observed." (quoting Oliver Wendell Holmes, Jr., *The Common Law* 67 (1881))).

It is the factfinder's role to consider the evidence and decide what it believed happened, and we must defer to that judgment if "any rational factfinder could have viewed it as the trial court did." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). We find that a rational factfinder could have viewed matters as the trial court did, and thus we affirm Thrower's conviction for attempted malicious wounding.

### C. *The trial court did not err in convicting Thrower of attempted robbery.*

Thrower contends that the evidence is insufficient to sustain his conviction for attempted robbery because there is no evidence that he demanded money or tried to grab for the bills in Guzman's hand. We disagree.

"[T]o convict a defendant of attempted robbery, 'the Commonwealth is required to prove beyond a reasonable doubt that [the defendant] intended to steal personal property from [the victim], against his will, by force, violence, or intimidation.'" *Jones*, 70 Va. App. at 318 (second and third alterations in original) (quoting *Pitt v. Commonwealth*, 260 Va. 692, 695 (2000)).[1] The intent to steal is the "inten[t] to deprive the owner permanently of his property." *Pierce v. Commonwealth*, 205 Va. 528, 533 (1964). This intent "does not have to exist for any particular

---

[1] The Commonwealth must also prove that the defendant committed a "direct, ineffectual act done towards its commission." *Fletcher*, 72 Va. App. at 506 (quoting *Haywood*, 20 Va. App. at 565). Here, Thrower challenges only whether the evidence was sufficient to establish that he had the intent to steal from Guzman.

- 5 -

length of time. It may occur momentarily." *Durham v. Commonwealth*, 214 Va. 166, 169 (1973)). "Intent is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be proved by a person's conduct or by his statements." *Johnson v. Commonwealth*, 209 Va. 291, 295 (1968).

Here, Thrower concedes that "the evidence established that [Thrower] desired money." Immediately before assaulting Guzman, Thrower asked Guzman for money twice, requests that Guzman refused. Following the second rejection, Thrower pursued Guzman, who was holding two twenty-dollar bills in his hand, shouting at him. Thrower then drew a knife with a six- or seven-inch blade and thrust the knife toward Guzman's stomach. A rational factfinder could reasonably conclude that the only reason Thrower did not take or grab for Guzman's money is because Guzman evaded Thrower's attack and immediately took out his phone to call the police, prompting Thrower's flight. *Cf. Johnson*, 209 Va. at 292, 295 (finding the evidence sufficient to demonstrate an intent to steal even where the victim interrupted the attempted robbery before the assailant uttered a demand for cash or made an attempt to seize the victim's property).

Thrower argues that he did not intend to steal from Guzman but rather that he was upset because Guzman spit at him. There is no evidence that Guzman actually spit on Thrower. Even so, it is possible that Thrower was motivated by both an intent to steal and by an intent to avenge an insult. *See Jordan v. Commonwealth*, 66 Va. (25 Gratt.) 943, 948 (1874) (holding that assailants may have seized their victim's pistol both to keep it permanently *and* to "prevent its being used against them. Both intents may have existed at the time."); *Johnson*, 209 Va. at 295 ("That it is possible to surmise or imagine that he had some other purpose different from that found by the jury is not enough to overcome the reasonable and justified conclusion of the jury that the evidence showed that he intended to rob the cab driver.").

Here, Thrower asked Guzman for money and then pursued him with a knife after he refused to give Thrower money.  Viewing the evidence in the light most favorable to the Commonwealth, the record before us fully supports the trial court's conclusion that Thrower intended to steal Guzman's money.

### III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed*.